```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/16/2025__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
                                                        :
In re AMGEN INC. SECURITIES         x   Civil Action No. 1:23-cv-02138-JPC-HJR
LITIGATION
                                            CLASS ACTION

-------------------------------------------------------

# CASE MANAGEMENT PLAN
# AND SCHEDULING ORDER

The parties submit this Case Management Plan and Scheduling Order pursuant to Federal Rule of Civil Procedure 26(f):

1. **Meet and Confer**: The parties met and conferred pursuant to Fed. R. Civ. P. 16(c) and 26(f) on January 3, 2025 via telephone.

2. **Summary of Claims, Defenses, and Relevant Issues**:

   Plaintiff:

   This is a federal securities class action on behalf of all persons, other than Defendants, who purchased or otherwise acquired the common stock of Amgen Inc. ("Amgen" or the "Company") between July 29, 2020 and April 27, 2022, inclusive (the "Class Period"), under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

   Amgen, a large multi-national biopharmaceutical company, engages in an accounting practice known as "transfer pricing" that seeks to shift profits to subsidiaries in low-tax jurisdictions, such as Puerto Rico, to lower Amgen's aggregate tax liability. By the start of the Class Period (July 29, 2020), the IRS audited Amgen over its transfer pricing practices for its 2010-12 and 2013-15 tax years and, unbeknownst to investors, advised Amgen that it owed approximately $10.7 billion in back taxes, interest, and penalties. Plaintiff Asbestos Workers Philadelphia Pension Fund ("Plaintiff") alleges Defendants issued materially false and misleading statements to investors during the Class Period about the magnitude of the amounts sought by the IRS and failed to timely disclose Amgen's $10.7 billion contingent liabilities.

   On August 3, 2021, when Amgen disclosed to the market that the IRS was seeking approximately $3.6 billion, plus interest, in back taxes for Amgen's 2010-12 tax years, the Company common stock declined $15.77 per share, or 6.5%. Thereafter, on April 27, 2022, when Amgen disclosed to the market that the IRS was seeking approximately $5.1 billion in back taxes, plus interest, as well as approximately $2 billion in penalties for Amgen's 2013-15 tax years, the Company common stock declined $10.66 per share, or 4.3%. The price of Amgen stock continued to fall over the next several days as the market digested this news, reaching a low of just $227.32

per share on May 2, 2022, 8.6% below the closing price on April 27, 2022. Plaintiff and the members of the Class suffered damages as a result of Defendants' fraudulent conduct and the declines in the price of Amgen common stock. Plaintiff's Amended Complaint for Violation of the Federal Securities Laws, filed on August 31, 2023 (ECF No. 34), seeks redress for these losses.

On September 30, 2024, the Court denied Defendants' motion to dismiss the Amended Complaint finding that Amgen failed to adequately disclose material facts concerning the Company's potential financial exposure to the IRS as a result of the IRS's audits of Amgen's transfer pricing practices during its 2010-2015 tax years. *See* ECF No. 63. The Court explicitly rejected Defendants' contention that any purportedly uncertain finality of the amounts sought by the IRS or Defendants' disagreement with the IRS's conclusions relieved them of their duties under the federal securities laws to disclose the magnitude of the potential tax liability. Importantly, the Court made clear that whether the IRS's audit was complete or whether Amgen disputed and/or disputes the merit of the IRS's proposed adjustments is beside the point. On this point, the Court explained: "[t]he Company was (and is free) to vigorously dispute the legal and factual merit of the IRS's assessments, and to tell investors that it is doing so; what it cannot do consistent with Section 10(b) and Rule 10b-5, however, is present investors with an incomplete, unclear, and thus plausibly misleading picture of the financial risks posed by that dispute." *Id.* at 26-27. Since Amgen chose to speak about the IRS's audits of its 2010-15 tax years, it was under a duty to disclose full and complete information, including the magnitude of the amounts sought by the IRS. The Court held that "instead of providing investors with candid information regarding the extent of the financial risks posed by the IRS dispute, Defendants hid the enormous liability Amgen was facing behind a wall of opaque adjectives like 'significant' and 'substantial.' As alleged in the Amended Complaint, Defendants 'made a conscious decision' not to reveal the extent of the potential liability for several years, and in so doing understated and obfuscated the true nature of the IRS dispute." *Id* at 36.

On November 20, 2024, Defendants filed their Answer to the Amended Complaint. *See* ECF No. 69.

Defendants:

This action arises from Defendants' public disclosures of Amgen's bona fide dispute with the United States Internal Revenue Service ("IRS") over Amgen's transfer pricing for its tax years 2010 to 2015. Amgen, one of the world's leading biotechnology companies focused on developing medicine for serious illnesses, operates in approximately 100 countries worldwide. Like other multinational companies with global operations, Amgen must pay different income taxes for each jurisdiction in which it operates, requiring it to allocate profits among its subsidiaries in different jurisdictions based on considerations such as the value and risks associated with each entity. As explained by Ernst & Young LLP ("E&Y") in Amgen's annual reports, this practice, known as "transfer pricing"—a standard accounting practice—requires exercising significant judgment and navigating various interpretations of complex tax laws and regulations in different jurisdictions. The determination of transfer prices is required by tax authorities to allocate taxable income among countries and to ensure appropriate taxation. Accordingly, multinational companies use intercompany transfer pricing to price transactions among related companies operating in multiple countries.

The IRS audited Amgen's transfer pricing methods three times prior to the 2010-2012 audit. Amgen's methods were documented pursuant to tax regulations and thoroughly discussed with the IRS during each of these prior audits. The IRS made adjustments that did *not* materially impact Amgen's reserves and never proposed any penalties. Following these prior audits, Amgen continued to apply its same transfer pricing methods for tax years 2010-2012 and 2013-2015. When the IRS audited Amgen for tax years 2010-2012 and 2013-2015, it adopted a completely different position concerning Amgen's transfer pricing methods than it had in the three prior audits. Amgen continues to maintain that the IRS's newly-minted position is wrong, and is currently litigating the bona fides of Amgen's transfer pricing in U.S. Tax Court.

This putative securities class action focuses on Amgen's disclosure concerning its bona fide dispute with the IRS. Plaintiffs assert that Amgen should have, but did not, disclose non-final and unadjudicated amounts of *proposed* tax adjustments to Amgen's transfer pricing for tax years 2010-2015. Plaintiffs contend Amgen should have publicly disclosed the *proposed* adjustments even though (1) the audit process was not complete, (2) the preliminary amounts could change, (3) Amgen disclosed the precise amounts of adjustments upon the completion of the audit process, (4) Amgen complied with the applicable disclosure requirements under GAAP as reviewed by its auditor E&Y, (5) Amgen repeatedly disclosed information about the IRS dispute to investors along the way, including that any adverse result in tax court could have a "material" adverse effect on Amgen's financial results, (6) multiple tax court decisions had already rejected the positions that the IRS has taken during transfer pricing disputes and (7) Amgen was (and is) vigorously disputing in tax court the IRS's proposed adjustments, including both its calculations and newly-minted and unsupported approach to Amgen's transfer pricing analysis. *See, e.g.*, *Veritas Software Corp. v. Comm'r*, 133 T.C. 297, 316 (2009); *Amazon.com, Inc. v. Comm'r*, 148 T.C. 108, 150 (2017), *aff'd*, 934 F.3d 976 (9th Cir. 2019).

Accordingly, the evidence in this case will not support Plaintiff's allegations that Defendants made materially false and misleading statements with scienter. Plaintiff further will be unable to prove the element of reliance for Plaintiff, let alone establish that reliance could be proved on a class-wide basis. Plaintiff also will be unable to prove that the pleaded misstatements and omissions caused any stockholder's loss.

3. **Basis of Subject Matter Jurisdiction (and any dispute as to jurisdiction)**:

This Court has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934 [15 U.S.C. §78aa] and 28 U.S.C. §§1331 and 1337.

4. **Subjects on Which Discovery May Be Needed**:

Plaintiff:

Plaintiff anticipates taking discovery on the following subjects, without prejudice to its right to seek discovery on subjects that may be or become relevant in this action:

Plaintiff anticipates seeking discovery regarding the factual allegations in the Amended Complaint, class certification, damages, and any claims or defenses pled in Defendants' Answer to the Amended Complaint. Specifically, Plaintiff anticipates seeking discovery concerning, among other things: (i) Amgen's transfer pricing and its impact on Amgen's financial

performance; (ii) the IRS' audits of Amgen over its transfer pricing and the amounts sought by the IRS from Amgen in back taxes and penalties; (iii) Defendants' Class Period statements and omissions as alleged in the Amended Complaint, including concerning the IRS audits and Amgen's contingent tax liabilities; and (iv) the impact of Defendants' statements and omissions on the price of Amgen securities. Plaintiff anticipates seeking discovery relating to each of the elements of Plaintiff's claims and relating to defenses raised by Defendants. Plaintiff also anticipates seeking discovery from non-parties, including, without limitation, from former Amgen employees, market analysts, and/or governmental tax authorities, including the IRS.

   Defendants:

Defendants anticipate taking discovery on the following subjects, without prejudice to their right to seek additional discovery on subjects that may be or become relevant in this action:

Defendants anticipate seeking discovery relating to each of the elements of Plaintiff's claims and relating to Defendants' defenses, including: (i) Plaintiff's decision to invest in Amgen securities; (ii) Plaintiff's reliance on the allegedly false and misleading statements; (iii) damages; and (iv) class certification, including issues of commonality, typicality, adequacy, and loss causation. Defendants also anticipate seeking discovery from non-parties, including, without limitation, from (i) Plaintiff's investment advisors involved in the decision to purchase Amgen securities, if any; and (ii) Ernst & Young LLP.

5. **Initial Disclosures** pursuant to Fed. R. Civ. P. 26(a)(1) were exchanged on **January 6, 2025**.

  (a) **Plaintiff Asbestos Workers Philadelphia Pension Fund** disclosed on **January 6, 2025** the information required by Fed. R. Civ. P. 26(a)(1).

  (b) Defendants **Amgen Inc. ("Amgen" or the "Company"), Robert A. Bradway ("Bradway") and Peter H. Griffith ("Griffith")** disclosed on **January 6, 2025** the information required by Fed. R. Civ. P. 26(a)(1).

6. **Amended Pleadings**:

  (a) No additional parties may be joined after **September 30, 2025**. Any motion to join after this date will need to meet the good cause requirements of Fed. R. Civ. P. 16.

  (b) No amended pleadings may be filed after **September 30, 2025**. Any motion to amend after this date will need to meet the good cause requirements of Fed. R. Civ. P. 16.

7. **Discovery Plan**:

  (a) All fact discovery shall be completed by **March 12, 2026**.

    (b)    Initial requests for production shall be served by **February 18, 2025**. Any subsequent requests for production must be served no later than 45 days prior to the discovery completion deadline.

    (c)    Initial interrogatories shall be served by **February 18, 2025**. Any subsequent interrogatories must be served no later than 45 days prior to the discovery completion deadline.

    (d)    Requests to admit shall be served by **January 26, 2026**.

    (e)    Depositions shall be completed by **March 5, 2026**.

    (f)    The parties propose the following limits on discovery:

- The parties intend to meet and confer on a protocol for depositions in this case (including physical location and/or remote means) and will submit to the Court a proposed protocol by **February 13, 2025.**

- The parties agree that document production should be substantially completed by **July 14, 2025.**

- The parties agree that the deadline for the close of fact discovery will be **March 12, 2026.**

- Plaintiff intends to seek an enlargement of the presumptive ten (10) deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i). Defendants reserve the right to object and oppose such request at the appropriate time, after considering the circumstances present at the time of the request, and after meeting and conferring with Plaintiff.

    (g)    Except as otherwise modified in 7(f) above, the parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The interim fact discovery deadlines may be altered by the parties on consent without application to the Court, provided that the parties meet the deadline for completing fact discovery.

    (h)    The parties would like to address at the conference with the Court the following disputes, if any, concerning fact discovery: None.

8. **Expert Discovery (if applicable)**:

    (a)    The parties **do** anticipate using testifying experts.

    (b)    Anticipated areas of expertise:

- • At this time, Plaintiff anticipates submitting expert reports regarding the following topics: (i) class certification; and (ii) loss causation, materiality and damages.

- • At this time, Defendants anticipate submitting expert reports regarding the following topics: (i) price impact, loss causation, reliance, materiality and damages; (ii) transfer pricing; and (iii) Generally Accepted Accounting Principles ("GAAP"). Defendants reserve the right to identify additional topics and/or experts as may be or become necessary in this action.

(c) Expert discovery shall be completed by **July 13, 2026**.

(d) By **January 16, 2026**, the parties shall meet and confer on a schedule for expert disclosures, including reports, production of underlying documents, and depositions, provided that (i) expert report(s) of the party with the burden of proof shall be due before those of the opposing party's expert(s), and (ii) all expert discovery shall be completed by the date set forth above.

(e) The parties would like to address at the conference with the Court the following disputes, if any, concerning expert discovery: None at this time.

9. **Electronic Discovery and Preservation of Documents and Information**:

(a) The parties **have** discussed electronic discovery.

(b) If applicable, the parties shall have a protocol for electronic discovery in place by **February 13, 2025**.

(c) The parties would like to address at the conference with the Court the following disputes, if any, concerning electronic discovery:

**The parties do not currently have disputes regarding electronic discovery.**

10. **Anticipated Motions** (other than summary judgment, if any):

- • Plaintiff intends to move for class certification by **August 8, 2025**. The parties agree to the following deadlines for class certification motion practice and class certification discovery which will include depositions and potentially expert discovery relating to class certification issues: (i) service of Plaintiff's opening class certification motion is due on **August 8, 2025**; (ii) service of Defendants' opposition to Plaintiff's motion for class certification is due on **October 24, 2025**; and (iii) service of Plaintiff's reply in support of its motion for class certification is due on **December 23, 2025**. The parties will file Plaintiff's motion and all related briefing on December 23, 2025, following service of Plaintiff's reply. The parties will meet and

confer about depositions and potential expert discovery relating to class certification issues.

11. **Summary Judgment Motions**: No less than 30 days before a party intends to file a summary judgment motion, and in no event later than the close of expert discovery, the party shall notify this Court, and the District Judge, that it intends to move for summary judgment and, if required by the District Judge's Individual Practices, request a pre-motion conference.

    If pre-motion clearance has been obtained from the District Judge where required, summary judgment motions must be filed no later than 30 days following the close of all discovery if no date was set by the District Judge or, if a date was set by the District Judge, in accordance with the schedule set by the District Judge. If no pre-motion conference is required, summary judgment motions must be filed no later than 30 days following the close of discovery.

    Any summary judgment motion must comply with the Federal Rules of Civil Procedure, the Local Rules of this District, and the Individual Practices of the District Judge to whom the case is assigned.

12. **Pretrial Submissions**: The parties shall submit a joint proposed pretrial order and any required accompanying submissions 30 days after decision on the summary judgment motion(s), or, if no summary judgment motion is made, 30 days after the close of all discovery.

13. **Trial**:

    (a)  All parties **do not** consent to a trial before a Magistrate Judge at this time.

    (b)  The case **is to be** tried before a jury.

    (c)  The parties anticipate that the trial of this case will require **three weeks**.

14. **Early Settlement or Resolution**:

    (a)  Settlement discussions have **not** taken place.

    (b)  The parties have discussed an informal exchange of information in aid of early settlement and have agreed to exchange the following:

    - None.

    (c)  The parties have discussed use of alternative dispute resolution mechanisms for use in this case, such as (i) a settlement conference before the Magistrate Judge, (ii) participation in the District's Mediation Program, and (ii) retention of a private mediator. The parties propose the following alternative dispute mechanism for this case:

- While settlement discussions have not yet taken place, the parties agree that, in the event that they endeavor to settle this action, they will pursue private mediation.

(d) The parties recommend that the alternative dispute resolution mechanism designated above be employed at the following point in the case (e.g., within the next 30 days; after exchange of specific information; after deposition of plaintiff; etc.):

- The parties have not discussed at what point in the case they may engage in alternative dispute resolution.

(e) The use of any alternative dispute resolution mechanism does not stay or modify any date in this Order.

15. **Other Matters the Parties Wish to Address (if any)**:

**The deadlines that the parties have agreed upon are summarized in the chart below:**

| EVENT | Deadline |
|---|---|
| Initial Disclosures | January 6, 2025 |
| Electronic Discovery Agreement | February 13, 2025 |
| Deposition Protocol Agreement | February 13, 2025 |
| Initial Requests for Production/ Interrogatories | February 18, 2025 |
| Substantial Completion of Document Productions | July 14, 2025 |
| Service of Class Certification Motion | August 8, 2025 |
| Amendment of Pleadings | September 30, 2025 |
| Joinder of Additional Parties | September 30, 2025 |
| Service of Class Certification Opposition | October 24, 2025 |
| Service of Class Certification Reply and Filing of All Class Certification Briefing | December 23, 2025 |
| Meet and Confer regarding fact and expert discovery schedule | January 16, 2026 |
| Requests to Admit | January 26, 2026 |
| Deadline for completing depositions | March 5, 2026 |
| Close of fact discovery | March 12, 2026 |
| Close of expert discovery | July 13, 2026 |

16. **The Court will fill in the following**:

A status conference will be held before the undersigned on ___ at ___.m.

X The parties shall submit a joint status letter by <u>March 17, 2025</u> no longer than <u>4</u> pages.

- 8 -

Respectfully submitted this 15th day of January, 2025.

| ROBBINS GELLER RUDMAN & DOWD LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|---|---|
| SAMUEL H. RUDMAN | JAY B. KASNER |
| EVAN J. KAUFMAN | PETER MORRISON |
| MARK T. MILLKEY | TANSY WOAN |
| AVITAL O. MALINA | MICHAEL W. RESTEY |
| SKYLER J. SANDS | |

/s/ Evan J. Kaufman
EVAN J. KAUFMAN

/s/ Jay B. Kasner
JAY B. KASNER

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
mmillkey@rgrdlaw.com
amalina@rgrdlaw.com
ssands@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

Dated: New York, New York
January 16, 2025

One Manhattan West
New York, NY 10001
Telephone: 212/735-3000
jay.kasner@skadden.com
tansy.woan@skadden.com
michael.restey@skadden.com

2000 Avenue of the Stars, Suite 200N
Los Angeles, CA 90067
Telephone: 213/687-5000
peter.morrison@skadden.com
*Attorneys For Defendants Amgen Inc., Robert A. Bradway And Peter H. Griffith*

SO ORDERED.

_____
HENRY J. RICARDO
United States Magistrate Judge