```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK


In re:                                   :
                                             Docket #23cv2138
AMGEN INC. SECURITIES LITIGATION         :

                                         : New York, New York
                                           January 8, 2026
--------------------------------------:



                    PROCEEDINGS BEFORE
                THE HONORABLE HENRY J. RICARDO,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:             ROBBINS GELLER RUDMAN & DOWD LLP
                           BY:  EVAN KAUFMAN, ESQ.
                                SKYLER SANDS, ESQ.
                                JASON EDELMAN, ESQ.
                                AVITAL MALINA, ESQ.
                           58 South Service Road, Suite 200
                           Melville, New York 11747

For Defendants:            SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM LLP
                           BY:  PETER MORRISON, ESQ.
                                TANSY WOAN, ESQ.
                           One Manhattan West
                           New York, New York 10001-8602

                           KIMBERLY DUNNE, ESQ.
                           Amgen
                           One Amgen Center Drive
                           Thousand Oaks, California 91320-1799




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

PROCEEDING                         3

THE COURT:  Good morning, everybody.  It's Judge Ricardo.  We are here for a discovery conference in the case of In Re Amgen Inc. Securities Litigation, number 23cv2138.  The conference is being recorded in case the parties wish to order a transcript later. Let's begin with appearances.  Who's appearing for the plaintiffs?

MR. EVAN KAUFMAN:  Good morning, Your Honor, this is Evan Kaufman with Robbins Geller Rudman & Dowd on behalf of the plaintiff.  And also on the line from my firm are Skyler Sands, Jason Edelman and Avital Malina.

THE COURT:  Good morning.  Who's appearing for the defendants?

MR. PETER MORRISON:  Good morning, your Honor. It's Peter Morrison with Skadden Arps on behalf of the defendants.  My partner, Tansy Woan, is on, as well as Kimberly Dunne, Amgen's head of corporate litigation.

THE COURT:  Good morning.  Is there anyone else who wishes to appear?

Okay, hearing none, we shall proceed.  So I have a December 29 letter from the defendants asking to have a conference about this question about defining the scope of the privilege waiver.  I also have ... and

PROCEEDING                        4

that's number 99 on the docket ... I also have a letter from defendants of the same date essentially asking for a fuller briefing than my standard letter briefing. That's number 100 on the docket.  And then I have plaintiff's response letter dated January 6, which is number 103 on the docket.

I've been persuaded of this much.  I would benefit from briefing on this.  I do think that the issue is sufficiently complicated and important that it would be hard to do it justice in short letter briefs. I do have some concerns about the timing of the briefing.  It seems to me this is an issue we should try to get to the bottom of quickly.  And I do worry about the briefing being extended several months.  So let me ask ... I guess it was defendants that proposed the briefing schedule ... do you see any possibility to condense it a bit?

MR. MORRISON:  Absolutely, your Honor.  We're happy to move as quickly as you'd like.

THE COURT:  All right, well, I'm not asking anyone to do the impossible, but I think you had initially suggested 28 days from the due date of plaintiff's letter.  And I guess plaintiff's letter came in on the 6th.  It would be your motion so, you know,

PROCEEDING                          5

realistically how much time do you think you need?

MR. MORRISON:  How about 20, 20 and 10, would that schedule work?

THE COURT:  That seems okay.  Is that all right with the plaintiffs?

MR. KAUFMAN:  Other than our objection to the briefing, yes.  Yes, that schedule will be fine.

THE COURT:  Your position is I should just deny the relief now without the benefit of the briefing, if I understand you correctly?

MR. KAUFMAN:  Well, you know, our position is that ... well, first, it's unclear what the briefing is going to be ... I think that's something we should talk about ... because it's our view that it's premature to even have briefing on what the scope of the privilege should be at this point because defendants haven't produced a privilege log or any of the documents to us. So it would really be prejudicial to ask us to litigate what's going to be the definition of the scope of the waiver where the courts have routinely held on this issues that the issue of waiver is really, you know it's very fact specific and we really need the benefit of what their defense is in order to determine what the scope of the waiver is going to be.

PROCEEDING                           6

THE COURT:  I hear you.  I have plenty of questions about that myself, and I hope we will discuss it, although obviously I'm just saying at the outset I'm not going to make a decision today.  I think I would benefit from the briefing, but I have some of the very same questions.  And maybe we can talk about that on the conference today.

So let me take it back to defendants.  You had suggested a 20-20-10.  When does the 20 start running?

MR. MORRISON:  How about 20 days from today ...

THE COURT:  All right.

MR. KAUFMAN:  ... which would be January 28, I believe.

THE COURT:  All right, we'll go with that.

Okay, so let's ... since we're all on the phone, let's talk a little bit about what the briefing is going to be, because I too was a little confused about that.  And it could be beneficial, while we're all here, to talk about exactly what needs to be decided and what candidly I can decide because I do have some questions about that.  And I'll start by just stating my understanding of the situation ... and I put it out there really with the invitation to the parties to

PROCEEDING                        7

correct it if I've got something wrong.  Because my goal earnestly is to understand the situation and to understand the dispute.

I understand that there is obviously an underlying dispute over tax liability, and it has to do with transfer pricing methodology.  And there's a lot of money at stake in that.  I understand that the claim the plaintiffs make here is that Amgen's disclosure of certain events was inadequate and at least according to defendants' letter the focus is on a notice of proposed adjustments and revenue agency reports that was received at some point in time for the 2010-2015 tax years.  I'm sure this is an oversimpli-fication of the dispute, but in general terms I understand the plaintiff says Amgen should have disclosed the number that the IRS presented at the time and that's not what the disclosure was.

I understand Amgen says its reasons for not disclosing it was based on certain U.S. GAP principles and because it was subject to change and that Amgen wants to make a limited waiver of privilege but to draw a line in the sand, as it were, to say well, the waiver extends only to the advice received about the disclosure issues and doesn't extend to the advice received about the underlying litigation because, of course, that

PROCEEDING                    8

litigation is continuing.  And I do understand the concern.  And obviously, I have some sympathy for the dilemma that Amgen faces.

Plaintiff I hear saying well, look, the two are intertwined, it's not that we need to draw that line. And they've cited to me Judge Cote's decision in *In Re Parego*, where essentially she said in the context of that dispute and that defense, which I realize could be different from what we have here, she said the line is untenable because the divide or the division that the defendant tried to make was untenable because fundamentally the defendant's reasons for not making the disclosure had to do with its view that it would prevail on the merits of the dispute.  And where those were the facts, Judge Cote decided that the line that the defendant was trying to draw is illusory.  That's my understanding of the facts, and I put that out there with the invitation to correct me if I've got something wrong.  But the question I'm trying to understand is how can I decide the scope of the waiver ahead of time before the waiver actually occurs and just based on an abstract discussion of the line that the defendant is trying to draw.  And I guess that's as question I'd pose to the defendants in the first instance.

PROCEEDING                           9

MR. MORRISON:  Yes, your Honor, Peter Morrison. Those types of discussions happen all the time.  Right? So you have abstract discussions about relevance; you have abstract discussions about date ranges; you have abstract discussions about custodians and things of that nature.  All that Amgen is asking for, your Honor, is to understand the scope of the waiver so that we're not in the prejudicial position where we are first disclosing, only to learn later that the scope of the waiver is far broader than we ever intended or ever would have signed up for, had we known what the scope was in advance.  It would put Amgen in the impossible situation to take a leap of faith to disclose, not knowing where that disclosure ends because we don't have any guidance from the Court.

So all we're saying is we think the disclosure should be limited to what's at issue in this case, which is the disclosure of the number in the NOPA.  And your Honor, we went to them in good faith to try to have this discussion so that we could have some semblance and understanding of the scope, just like we would do in any other discovery context.  And so we staked out a position, the plaintiffs have now staked out a position. And so we do think the Court can then engage, if it

chooses to, about where we're going to start to draw the line so the parties have some guidance about what's in and what's out.

If we didn't do that, it would be even worse because if you didn't give us some guidance on scope, then the situation would be this. Amgen would either have to decide to take this leap of faith, disclose not knowing at all where the end of the waiver might be; or alternatively ... and by the way, and do that while we all know that the underlying IRS tax case is still going, or alternatively ... you know, Amgen strongly believes there's been no fraud here and wants to put forward a full-throated defense. But the alternative would be not to make an argument about why there's a lack of scienter for fear of a future risk that the scope of the waiver would not be palatable.

And so to alleviate that concern, your Honor, we came to you on good faith to just get some guidance on the scope. Is everything from the tax case going to come in? We don't think it should because the law limits this, the law limits the scope of the waiver to the subject matter of the advice. And we've told the plaintiff the advice we're talking about is advice on the disclosure in connection with the NOPAs. And we

PROCEEDING                    11

think that, given the positions that have been staked out, the Court can give us that guidance and allow the parties to proceed.  We're trying to get the plaintiffs the documents that they need to cross-examine us on this defense, and we're happy to do that.  We just ... we want to have some semblance of where the lines are drawn before we go down that road.  And we definitely think the Court can do that.  And in fact ... and we'll cite these cases in our papers ... there are many cases, your Honor, where Courts make rulings about waiver issues and then at that point, the parties can decide whether to proceed under that scope or at that point abandon the defense.  And so that's all we're asking for here.  Give us some idea about where those lines are drawn so that the parties can proceed accordingly.  That's all.

THE COURT:  So it sounds like ... it almost sounds like you're asking for a declaratory judgment of sorts that if I had ... I'll duck the question of whether there's a genuine case or controversy and whether it's an advisory opinion ... I'll put that to the side ... but it sounds like you're sort of asking for a pre-ruling about, you know, is the line you want to draw a viable line such that you can make a limited waiver and not a complete waiver.  And it sounds like

PROCEEDING                          12

you want a binding ruling ahead of time before you actually produce the privileged documents.  Am I understanding you?

MR. MORRISON:  Well, yes and no.  I mean, yes, we're looking for guidance from the Court; but obviously, once you rule, we're going to produce documents ... presumably, if we don't abandon the defense ... in connection with that ruling and produce a privilege log.  You know, to the extent that there's continuing dialogue with the plaintiffs, that can go on afterwards.  But yes, we are looking for some guidance on scope.

The other thing I would just say is ... you know, and again, this is our position, your Honor ... but our position is not that this is a limited waiver. Our position is is that it's a waiver ... we understand that ... but the scope of that waiver should be to the issues in the Complaint.  And that's what the courts look at.

And again, we'll brief this up for you.  And we wholeheartedly agree that this should be done on the full record, but the courts start by looking at what the claims are and what the defense is.  And the defendant has to do with disclosure.  And the claims have to do

PROCEEDING                              13

with disclosure.  That's what this case is.  This case is not about underlying transfer pricing issues.  And so it's not limited in the sense of we don't want a full waiver.  We're happy to produce documents, but the scope of that waiver should be ... and the case law says this ... it should be narrowly tailored and no broader than necessary to ensure fairness.  And that fairness goes to the issues in the case, the claims and defenses.  And those claims and defenses have to do with the disclosure around the NOPAs and the RARs, as your Honor articulated earlier.

THE COURT:  No, I hear you.  And look, at the end of the day, I might end up agreeing with you on the scope of the waiver ... I don't know.  But the concern I have and what I'm trying to understand is this:  At what stage does plaintiff get to challenge your position on the scope of the waiver?  It sounds like you're asking me to issue a ruling now, before you produce any documents, that bars plaintiff from challenging your position on the scope of the waiver forever.  But what I hear plaintiff saying is well, wait a minute; we can't really litigate what the scope of the waiver was until we see the documents that were produced, until we further understand the basis for the advice-of-counsel

PROCEEDING                           14

defense and what was relied upon; and then and only then would we plaintiffs be in a position to say either okay, we accept the line you're drawn, it seems valid in light of the documents you've produced, or to present the argument that the plaintiffs presented successfully in *In Re Parego*, which is the line is untenable because fundamentally the call that was made on the disclosure issue depended entirely on advice about the merits of the underlying suit and not something else.  So I'm just trying to figure out when, if ever, does plaintiff get to dispute your position on the scope of the waiver if I do what you ask me to do?

            MR. MORRISON:  Well, your Honor, they've staked out a position on what they think the scope of the waiver should be on page three of their brief.  And so they have over 100,000 pages of documents, they have our answer and pleadings.  We've had 5, 6, 7 meet-and-confers.  They understand our position.  And for the first time, notwithstanding all those meet-and-confers, your Honor, they didn't engage on scope saying that it was premature.  And so for the first time in a letter they've staked out a position, and it's on page three. And so if that's their position ... and we have our position ... we think that the Court can join issue with

PROCEEDING                    15

that.

THE COURT:  So you think, if I understand it, you think the plaintiff should have to litigate the scope of the waiver now in this briefing and then I should issue a ruling and then that binds them forever?

MR. MORRISON:  It binds them in the sense that there is a ruling on scope of the waiver.  So if the Court says, "I think that the bounds of the waiver is the disclosure advice," then the plaintiff shouldn't be able to go and try to inject all of the advice in the underlying tax court case into the disclosure case?  Yes, your Honor.  Now, look, that doesn't mean that plaintiffs are disabled from taking up issues with the Court going forward, but Amgen needs to have some comfort about what the scope of the waiver is before it decides to go down this road.

And look, your Honor, just to say it, we tried to ameliorate this issue with them by suggesting that we produce a privilege log and some documents to them, provided that they agreed that if we can't get an agreement on scope and we can't ... and ultimately there's some finding that the scope of the waiver is far more broad than anything Amgen ever would have signed up for, that we can withdraw the defense at that time and

PROCEEDING                    16

we would claw back those documents so that they could have some information, and they rejected that.  So we tried to help them with the problem they're identifying. We went ... and again, we're doing everything that we can.  We acknowledge that if we're going down this road, they get information and they get to test our defense. We don't have any issue with that.  And we're happy to give them all of the information with respect to the disclosure advice.  And they said it's premature because they don't have enough information.  And we went to them, your Honor.  We said all right, how about this? We'll send you ...

THE COURT:  No, I hear all that, and I'm not for a moment questioning your good faith or that you're trying to find a rational, sensible solution to this.

MR. MORRISON:  Yes.

THE COURT:  I appreciate your dilemma, and I have some sympathy for it.  The question I'm ... so I don't fault you at all for asking for this relief.  I think what I'm struggling with is whether Rule 502 authorizes me to grant it.  I'll confess I've always thought of 502 as being about inadvertent production. And obviously, it does address that.  I take it your position is it does more than that and it lets me decide

PROCEEDING                    17

ahead of time the scope of the waiver.  And if that is your position, I'd certainly like to hear more about that in the briefing because that would be new to me.

MR. MORRISON:  Yes, your Honor.  In fact, Judge Rakoff actually recently issued a decision, *SEC vs. Bank of America Corp.*, where he does issue a 502 order where the parties wanted to produce privileged material to the SEC.  And an order was issued limiting the waiver to that case so that it wouldn't be produced in the underlying private securities litigations.  So that's just one example.

THE COURT:  And that's a classic 502(d) issue, which is that the privilege, if it's waived in this case, it's not waived in other cases.

MR. MORRISON:  Correct.

THE COURT:  I didn't get the sense the plaintiffs were pushing back on that kind of order, although I'll ask them.  I got the sense that what they were pushing back on was your request for me to decide the scope of the waiver ahead of time.  And you know, as I read 502(a), basically as I recall, this rule was enacted to avoid, you know, broad subject matter waiver, particularly in the era of electronic discovery.  I'm old enough to remember the time before electronic

PROCEEDING                    18

discovery.  And as I look at 502(a), obviously, it turns on whether the waiver is intentional.  Now obviously, what you're purporting to do is intentional but for a certain scope.  (a)(2) essentially asks whether they concern the same subject matter.  And I hear your argument.  You would say the disclosure is a different subject matter than the underlying transfer pricing issue.  You know, reasonable people could differ on how finely you slice that, but I understand your position. But then three asks whether the disclosed and undisclosed communications ought in fairness to be considered together.  And I guess what I'm struggling with is how to make that determination without having the disclosed communications.

MR. MORRISON:  Well, I understand, your Honor, and we're happy to brief that up for you to try to lay that out.

THE COURT:  Okay.

MR. MORRISON:  But it's ... you know, again, it's a little bit of a chicken-and-the-egg problem.  But we thought the way to solve that ... and we can suggest this in our briefing ... was to do what we went to the plaintiff to do, which is let's get them the information so that they can have a more concrete record if they'd

PROCEEDING                         19

like and if the Court would like, but make sure that we preserve our right, which is our right, to abandon the defense should the scope of the waiver suddenly encompass something that is far greater than Amgen ever expected or intended.  That would solve the issue, and we're happy to go down that road, provided that obviously if we abandon the defense and no one is going to use the documents, we'd be able to claw them back. And obviously, as you noted, it doesn't sound like there's much of a debate over the 502(d) issue so, you know, that protection would help, as well.  So that was our solution for what you're suggesting.

THE COURT:  Okay.

MR. MORRISON:  But we certainly think that you're empowered to make a decision in discovery to move the case along as to scope.  And there's certainly cases that do that that we will cite to you in our briefing.

THE COURT:  Great.  Okay.  And then since you'll do that, maybe I'll stop beating this particular dead horse.  I do want to ask you a little bit more about another point you made, which is the kind of clawback option that you want to retain.  And I want to make sure I understand this.  It sounds like you're asking me to make a ruling upfront about the scope of

PROCEEDING                    20

the waiver.  But you're concerned that sometime down the road either I'll change my ruling or Judge Cronan will reverse it or something like that and circumstances might change; and if there's another ruling by me, Judge Cronan, who knows that the scope is broader than you thought initially, it sounds like you want to be able to take back the documents and abandon the reliance on advice-of-counsel defense.  I'd like to hear a little bit more about that.  Obviously, the conventional wisdom I always was raised with was with certain limited exceptions, once there's a voluntary waiver and the documents are out there, the privilege is waived.  What can you tell me about law or precedent about being essentially able to undo the waiver after the fact, after making a known waiver at the time?

         MR. MORRISON:  Yes, so let me make sure that I clarify our position, because I think it might be helpful.  So what we're suggesting is we have this argument now, you're going to make a ruling on scope ... hopefully ... and then sometime shortly after that, we would then have to make a choice about whether we're going to proceed or not.  So we're not talking about somewhere all the way down the road.  At some point we have to make a decision.  But what the law is, your

PROCEEDING                          21

Honor, is the law does actually permit ... and there's many cases, and again, we'll cite these to you ... that stand for the proposition that once a decision is made with respect to waiver, the party has the right to abandon that defense, that it need not produce those documents.  And so that's sort of our position.

Now, the alternative that we're suggesting is trying to accommodate plaintiff's need for information. And so we do think that the Court is empowered to make an order that simply says in order to give them the information they need in this particular circumstance, given the underlying tax court case that's ongoing, given that we need some information about scope, get them the information, we'll get a ruling from you, and then we'll have to decide, based on that scope, whether to proceed or not, based on your ruling.  And once we do that, if we abandon it, which we're entitled to do under the law ... and again, we'll cite to those cases ... we're just asking for the additional protection that because we would be abandoning the defense, there'd be no need for anybody to have those documents anymore because we've abandoned the defense ... we're not asserting advice of counsel ... therefore, there's no need for the waiver, and we're just doing this to

PROCEEDING                    22

accommodate the plaintiffs to get more concrete information.  And so we would ask for a clawback in addition to the 502(d) protection.  So it's two different ...

THE COURT:  Yes, and I understand you're going to ...

MR. MORRISON:  ... two different roads.

THE COURT:  ... (indiscernible) but that's definitely something I'd want to hear more about.

MR. MORRISON:  Sure.

THE COURT:  I understand how there can be a clawback for inadvertent production that was obviously at least one of the motives for enacting Rule 502.  What I'm less clear on is how there could be a clawback when first there was an intentional production and waiver but a ruling was then issued and then the party that made the production takes into account the ruling, changes its mind and says, well, in light of that ruling, I'd rather not pursue this defense; give me the documents back or destroy them.  You say there's cases on that; I just ... I want to hear more about that because that sounds odd to me.  But I'll hear you out, obviously.

MR. MORRISON:  Your Honor, let me just ... there's cases on the idea that we can abandon the

PROCEEDING                          23

defense.  And then we think that the Court has the power to order the clawback based on the rationale that if we choose to abandon the defense, there's no need for the plaintiffs to have those documents anymore; just we won't be able to rely on them and they won't be able to use them because we're not pursuing that defense any longer, that's all.  But the cases I'm talking about are the ones that permit us to abandon the defense.  And the protection in that line of cases, your Honor, for the plaintiffs, which we acknowledge is we can abandon the defense provided it doesn't prejudice the plaintiff's position, which gets to your point earlier about well, what if all the way down the road there's some change. If we relied on this defense and were all the way down the road and it would be prejudicial to the plaintiffs, they can make that argument because that is in the case law.  But what we're talking about is deciding now, after getting some guidance on scope, about whether or not to proceed.

THE COURT:  Okay, let me ask you about a different topic, which is production of the privilege log I understand from the letters plaintiffs wanted.  I understand there may be some documents that you're contemplating producing and don't want to produce until

PROCEEDING                    24

you have a ruling on the scope of the waiver.  But I have to think there are some documents you're planning to withhold no matter what.  But what I don't know is are you planning to log those, or what can you tell me about producing the log and why that shouldn't go forward?

MR. MORRISON:  Yes, look, we can produce ... I think we can produce a log that has the documents that we plan to withhold provided ... now, let me just ask for some clarification.  Are you contemplating, your Honor, us producing a log with everything on it, including the documents that we would otherwise agree to produce if the scope of the waiver was the disclosure advice alone, including ... would that be included on the log that you're contemplating, or were we excluding that and only including on the log the things that we believe would fall outside the scope of the waiver?

And the reason why we hadn't done it ... and we had spoken to the plaintiffs about that ... is that, you know, that would result in we'd produce a log and then we'd have to sort of redo it and take things off and add things on.  So we thought we would do it all at once. But if you think there's some benefit in producing a log that has the documents over which we're claiming

PROCEEDING                         25

privilege no matter what, we can probably do that.

THE COURT:  Yes.  I'll hear from ... I'll let the plaintiffs speak.  I know I've been asking you questions a bunch and I haven't heard much from the plaintiffs.  I was just ... in my mind I was trying to just understand a little better what the dispute is.  It seems to me if there are documents you're claiming privilege over no matter what because they're about the underlying dispute with the IRS, I couldn't understand why there's a delay in serving that log.  I could at least understand a logistical, practical reason why you might not serve the log of documents you're contemplating producing, although my guess is plaintiffs are going to want that, too, but ... anyway, that's why I raise it.  But why don't I let the plaintiffs talk?  I've been peppering you with questions.  Why don't I ... you've now ... I've tried to clarify some of this.  Maybe I've asked some of the questions that were in plaintiff's mind, maybe I haven't, but why don't I let the plaintiffs weigh in on what you've heard thus far?

MR. KAUFMAN:  Thank you, your Honor.  Yes, this was actually very helpful.  It did clarify a few things.  And just to take a step back.  So the reason why this has taken to this point is because we did make a good-

PROCEEDING                    26

faith effort multiple times in order to really hear defendants out, and we really ... we thoroughly researched the issues.  And the reason why we didn't agree to a stipulation is because what defendants are asking for, one, is not required by the Federal Rules; and two, it's unsupported by any case law we could find. And defendants did not cite a single case in their letter supporting either proposition they're asking for. So they're basically seeking relief that's never been done before.

        And the more we think about it ... and we wrote this in our letter ... it really looks to us like the defendants, they want to have their cake and eat it, too.  Okay?  They want to have the ability to raise an advice-of-counsel defense and let us see the documents that helped them, but if it's broader than the scope that they unilaterally want, then they don't want us to see anything.  And that's not how discovery works and that's not how the waiver works and that's not how the defense works.  And it's extremely prejudice to plaintiff for this to happen like this.

        First, with respect to the privilege log, there's no justification for why they shouldn't be producing the privilege log immediately.  And it should

PROCEEDING                    27

list every document.  If they're with ... if ... they have the documents, they're withholding the documents ... right?  You know, if there's a privilege, they list them on the log and they produce them.  And originally, yes, we did give them an extension for ... you know, because logistically as we were looking into the issue if we're going to enter into a stipulation with them, you know, we would accommodate the request.  But at this point, they're refusing to produce anything, so they should produce the privilege log, especially if we're expected to brief the scope of the privilege.  Like, they're not even producing the privilege log.  So I don't see that there's any basis whatsoever for them not to produce the privilege log listing all of the documents promptly, like right away.

Second, with respect to the scope, so according to defendants ... and defendants already have conceded in their letter that there are a group of documents that they concede are subject to the waiver and they're willing to produce.  However, they want to brief whether the scope of the waiver is broader than what they've already agreed.  Okay?  So as a result, there's no basis for them to not produce the documents they've already conceded are subject to the waiver.  The only reason for

PROCEEDING                    28

them to not produce them would be if they want to get an advisory opinion from the Court as to the broader so then they can like claw back everything, which is really the definition of ...

THE COURT:  What I understood them to say ... and I'll admit it wasn't entirely ... what I understood them to say was that there's a group of documents that they're prepared to produce under a waiver.  But at least what I thought they were saying was before they do it, they'd like some type of ruling essentially that they're right on the scope of the waiver; and when they have that ruling, then they'll produce them but they're reluctant to produce them ahead of time.  That's at least what I thought they were saying, but your guess may be as good as mine.

MR. KAUFMAN:  Right.  But if the waiver ...

MR. MORRISON:  That's what (indiscernible).

MR. KAUFMAN:  ... if ... and if your Honor determines that it's a broader waiver, then they don't want to produce ...  they're not going to produce anything.  So they want the ability to basically see into the future, to get your Honor to issue a ruling to give them insight into whether they are going to have to show us documents that they don't want to show us.

PROCEEDING                29

That's basically what it comes down to.  And there's no basis for that in the case law.  And it's really prejudicial to use to even ask us to litigate now and, you know, to try to litigate a definitive ruling on what the scope is.  Like we should have the opportunity to test the defense.

I mean, you know, with respect to an advice-of-counsel defense, there are different elements ... right?  One is that the defendants made complete disclosure to counsel ... right?  We have to conduct discovery on that, you know, that they sought advice from counsel as to the legality of their actions; they received advice that their conduct was legal; they relied on such advice in good faith ... right?  All of those things.  It's highly relevant what ... right? ... like what happened in order for us to determine what the proper scope is.

At this point sitting here, we don't even know if we would challenge anything.  It appears that we ... like because defendants, they wrote that ... they're even conceding that some documents subject to the underlying IRS dispute should be produced as long as they're intertwined with the disclosure.  Like what does that mean?  Like how are we supposed to litigate what's intertwined with the disclosure until we see the

PROCEEDING                    30

documents regarding the disclosure and we are able to probe that?  And that's why all of the case law on this say that you can't use it as a shield and a sword because that ... and that's clearly what's happening here.  But on top of that, they're adding on that they want to have a ... you know, they want to have basically a crystal ball predicting what the potential, you know, what the potential waiver is before they even disclose the privilege log, which is their position.  And I'm glad that they've agreed now to produce the privilege log, but we think it should have everything on there. And it's extremely prejudice to us.

THE COURT:  And just so I understand your position, it sounds like you're saying that if you're going to be asked to brief the scope of the waiver, you need some information about what documents that they would produce under a waiver?

MR. KAUFMAN:  Right, right.  At a minimum, we would need to know like ... because otherwise, we're operating in a ... we're completely blind and operating in a complete vacuum instead of just a partial vacuum, which would be if they would produce a privilege log.

THE COURT:  Yes, I understand that.  I hear you.  So let me ... it seems to me ... look, there's a

PROCEEDING                    31

lot I'm going to need to hear more about.  And I don't want to decide something prematurely.  But it seems to me defendants ought to produce their privilege log.  I'm having a hard time understanding how plaintiffs would even be in a position to argue about the scope of the waiver unless they know what it is that defendants are planning to produce and what it is they're planning to withhold because that would speak to the line that defendants are trying to draw in terms of what documents would be produced and what would be withheld.  Right now, all they really ... all the plaintiffs really have is defendants' description of that line in their letter. So my question for defendants is well, why shouldn't you produce the privilege log right away for everything?

MR. MORRISON:  We don't ... your Honor, during our meet-and-confer process, we and the plaintiffs agreed to push off the privilege logs to see if we can reach agreement.  Now that we have no agreement, I don't think we have any issue with producing a privilege log with everything on it.

THE COURT:  Okay, well, that's fair.  I do understand why while you were negotiating you held off. I'm not blaming anyone for that.  But it sounds like going forward, it makes sense for you to produce the

PROCEEDING                        32

logs.  Okay, so we've resolved ...

MR. MORRISON:  We're happy ...

THE COURT:  ... one thing today.

MR. MORRISON:  ... we're happy to do that.

Yes.

MR. KAUFMAN:  Your Honor, may I ... thank you.
Great.  And your Honor, may I clarify just one ... I
just want to clarify one point.  On the 502(d) issue ...

THE COURT:  Go ahead.  Yes.  Are you objecting
to that?  I said I would ask you that question, and I
forgot to ask you that question.

MR. KAUFMAN:  No, we're not objecting.  We
actually ... when we were negotiating this, defendants
raised with us ... they had two issues.  One was the
scope of the waiver, and two was they didn't want the
waiver in this case to impact the IRS litigation.  And
we actually, when we said to them we can't agree to the
scope; however, you know, we would consider not
objecting to your motion to the Court seeking relief
under 502(d).  I don't know if your Honor would be
comfortable granting that or not, but we actually
proactively in good faith tried to reach a compromise,
actually suggested to defendants that we would consider
not objecting.

PROCEEDING                    33

So no, not at all, we don't have any objection to that.  That's not ... you know, we're not ... that's a whole separate issue.  What we care about is our plaintiff and the class in our case.  That's all that matters to us.

THE COURT:  Okay, well, that's helpful.  Maybe we've narrowed ...

MR. MORRISON:  Your Honor, you've solved two things today.

THE COURT:  ... the issue a little bit.  It sounds like defendants want to talk.  Go ahead.

MR. MORRISON:  I'm so sorry, your Honor.  I was making a joke.  I said you've solved two things today.  So it sounds like ...

THE COURT:  That's more than ... that's two things more than most days.  So we're okay.

So all right, great.  Well, listen, I've appreciated this discussion.  I hope it's been helpful for the parties.  I know it's been helpful for me.  I do appreciate the gravity of the choice that Amgen has to make, and I do appreciate why briefing would make sense here, and I do understand that the parties have negotiated in good faith.  I certainly don't mean to suggest anything to the contrary.  It's a tricky

PROCEEDING                    34

problem, and I get why it's a dilemma for Amgen.  As explained, I have some doubts as to whether I can actually do what you want, but I certainly don't blame you for asking.  And I look forward to the briefing.

Is there anything else we ought to talk about today?

MR. KAUFMAN:  Yes, your Honor, just one more thing.  You know, just so that we ... you know, because, you know, it's important for plaintiff to actually have the privilege log for the briefing, can we set some type of deadline for when defendant should produce a privilege log to us of just like maybe like two weeks before their brief is due or something like that to give us some time to actually review it so we don't ... because based on conversations, it's our understanding it's going to be extremely voluminous, so ... it's going to be very long, so we might need some time.

THE COURT:  Fair question.  Let me ask defendants.  What can you do on that?

MR. MORRISON:  Can we ... how about can we produce it in two weeks?

THE COURT:  That's fine with me.  And it sounded like that was okay with the plaintiff, but I'll obviously let the plaintiff say otherwise.

PROCEEDING                    35

MR. KAUFMAN:  Well, I suggested like two weeks before their brief is due.  Could we compromise on what would ...

MR. MORRISON:  Should we do ...

MR. KAUFMAN:  A week and a half?

THE COURT:  That would be the same.  That's rough ... well, it's close.  I'll tell you what, let's ... I don't, while I like to move cases along, I don't like to ask parties to do the impossible, either. Defendants asked for two weeks.  I'll give them two weeks.  If, plaintiffs, you feel like you need more time on your brief, it sounds like you're only out, you know, maybe a week or 10 days from what you asked for, so if you want a little more time, that's okay.  I suspect, though, it's in your interests to try and keep this process moving.

MR. KAUFMAN:  Yes, your Honor.

THE COURT:  You're the plaintiff, after all.

MR. KAUFMAN:  That is very true.  Yes, we would like this to keep moving.

THE COURT:  Okay, so I'll ...

MR. MORRISON:  Okay, so ...

THE COURT:  ... give them two weeks to do the privilege log.  I'll keep the, I think it was 20-20-10

PROCEEDING                    36

schedule that we talked about.  But if, plaintiff, you feel that the schedule I imposed for production of a privilege log puts you in a jam and you need a little more time for your brief, you can always ask for it.

MR. KAUFMAN:  Okay.  Thank you, your Honor.

THE COURT:  Okay.  All right, well, great.  Thank you.  This has been helpful to me, and I look forward to reading about this interesting issue.

We're adjourned.

(Whereupon the matter is adjourned.)

37

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, IN RE AMGEN SECURITIES LITIGATION, Docket #23cv2138, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

CAROLE LUDWIG

Date:  January 12, 2026