UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

              :

              :   1:23-cv-02138 (JPC) (HJR)

IN RE AMGEN INC. SECURITIES     :

LITIGATION              :   **ECF Case**

              :

              :

              :

              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR (A) A PROTECTIVE ORDER DEFINING THE SCOPE OF PRIVILEGE WAIVER ARISING FROM DEFENDANTS' GOOD FAITH RELIANCE ON COUNSEL DEFENSE AND (B) AN ORDER LIMITING DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY

Jay B. Kasner
Tansy Woan
Michael W. Restey Jr.
Jacob G. Lefkowitz
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000


Peter B. Morrison
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
2000 Avenue of the Stars
Los Angeles, CA 90067
(213) 687-5000


*Attorneys for Defendants Amgen Inc., Robert
   A. Bradway and Peter H. Griffith*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ..........................................................................................................1

STATEMENT OF RELEVANT FACTS............................................................................4

ARGUMENT....................................................................................................................5

    I.      THE COURT HAS AUTHORITY TO ENTER A PROTECTIVE ORDER
          DEFINING THE SCOPE OF WAIVER RESULTING FROM A GOOD
          FAITH RELIANCE ON COUNSEL DEFENSE.......................................................5

    II.     THE COURT SHOULD ORDER THAT DEFENDANTS' WAIVER
          DOES NOT EXTEND TO LEGAL ADVICE AND WORK PRODUCT
          THAT DID NOT INFORM DEFENDANTS' DISCLOSURE DECISION. ..........8

    III.    IF THE COURT DOES NOT DEFINE THE SCOPE OF WAIVER NOW,
          IT SHOULD ENTER AN ORDER THAT FACILITATES THE
          PRODUCTION OF DOCUMENTS WHILE PRESERVING
          DEFENDANTS' ABILITY TO WITHDRAW THE DEFENSE AND
          CLAW BACK ANY PRIVILEGED MATERIALS. .............................................13

    IV.    THE COURT SHOULD ENTER AN ORDER LIMITING DEFENDANTS'
          PRIVILEGE WAIVER TO THIS ACTION ONLY UNDER FRE 502(d). ...............15

CONCLUSION.................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apica Sellers Representative, LLC v. Abbott Laboratories*,
No. 23-CV-1034 (MMG)(OTW), 2024 WL 5318651 (S.D.N.Y. Dec. 4, 2024)........ 2, 6, 7

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ....................................................................................7

*In re Broadcom Corp. Securities Litigation*,
No. SACV 01275GLTMLGX, 2005 WL 1403513 (C.D. Cal. Apr. 7, 2005) ...................10

*Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*,
No. 09 Civ. 8285(PGG)(FM), 2013 WL 142503 (S.D.N.Y. Jan. 7, 2013)........................15

*In re Buspirone Antitrust Litigation*,
208 F.R.D. 516 (S.D.N.Y. 2002) ....................................................................................14

*In re County of Erie*,
546 F.3d 222 (2d Cir. 2008)....................................................................................8

*Cruden v. Bank of New York*,
957 F.2d 961 (2d Cir. 1992)....................................................................................3, 9

*DC Comics v. Kryptonite Corp.*,
No. 00 Civ.5562 AGS, 2002 WL 1303110 (S.D.N.Y. June 13, 2002)...............................7

*Edmar Financial Co. v. Currenex, Inc.*,
347 F.R.D. 641 (S.D.N.Y. 2024) ....................................................................................6

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000).................................................................. passim

*In re Keurig Green Mountain Single Serve Coffee Antitrust Litigation*,
No. 14 MD 2542 (VSB)(HBP), 2019 WL 2724269 (S.D.N.Y. July 1, 2019)...................15

*Madanes v. Madanes*,
199 F.R.D. 135 (S.D.N.Y. 2001) ....................................................................................14

*Motorola, Inc. v. Vosi Technologies, Inc.*,
No. 01 C 4182, 2002 WL 1917256 (N.D. Ill. Aug. 19, 2002)...........................................7

*Novartis Pharma AG v. Incyte Corp.*,
778 F. Supp. 3d 637 (S.D.N.Y. 2025)...............................................................................6

*Oklahoma Firefighters Pension & Retirement System v. Musk*,
    22 Civ. 3026 (ALC) (GWG), 2025 WL 2982003 (S.D.N.Y. Oct. 23, 2025) .....................7

*In re Omnicom Group, Inc.*,
    233 F.R.D. 400 (S.D.N.Y. 2006) ...................................................................................9

*In re Perrigo Co. PLC Securities Litigation*,
    19cv70 (DLC), 2020 WL 7251277 (S.D.N.Y. Dec. 8, 2020)............................................12

*Perry v. City of New York*,
    13-CV-1015 (VSB), 2016 WL 11807719 (S.D.N.Y. Feb. 11, 2016) .................................9

*In re Piedmont Office Realty Trust Inc. Securities Litigation*,
    No. 1:07-cv-02660-CAP, 2011 WL 13169494 (N.D. Ga. Oct. 27, 2011).........3, 10, 11, 12

*PRCM Advisers LLC v. Two Harbors Investment Corp.*,
    20-CV-5649 (LAK) (BCM), 2022 WL 18027566 (S.D.N.Y. Dec. 30, 2022)...................14

*SEC v. Bank of America Corp.*,
    No. 09 Civ. 6829(JSR), 2009 WL 3297493 (S.D.N.Y. Oct. 14, 2009) ............................15

*SEC v. Honig*,
    18 Civ. 8175 (ER), 2021 WL 5630804 (S.D.N.Y. Nov. 30, 2021) ..................................10

*SEC v. Wyly*,
    No. 10-CV-5760 (SAS), 2011 WL 3366491 (S.D.N.Y. July 27, 2011)............................10

*Silverman v. Motorola, Inc.*,
    No. 07 C 4507, 2010 WL 2697599 (N.D. Ill. July 7, 2010) ............................................10

*Swidler & Berlin v. United States*,
    524 U.S. 399 (1998)......................................................................................................7

*United States v. Locascio*,
    357 F. Supp. 2d 536 (E.D.N.Y. 2004) ..........................................................................8, 9

## STATUTES

Fed. R. Civ. P. 16(c) ........................................................................................................2, 6

Fed. R. Civ. P. 26(c) ........................................................................................................2, 6

**INTRODUCTION**

This securities action challenges Defendants Amgen Inc., Robert A. Bradway, and Peter H. Griffith's (collectively, "Defendants") disclosures concerning its ongoing tax dispute with the Internal Revenue Service ("IRS") relating to transfer-pricing adjustments for tax years 2010-2015. During the relevant period, the IRS issued preliminary Notices of Proposed Adjustments ("NOPAs") and Revenue Agent Reports ("RARs") proposing certain tax liabilities. Defendants disclosed the existence of the dispute and warned investors that it could have a material impact on the company's financial results. Defendants also disclosed that the company disagreed with the IRS's position and intended to pursue administrative appeals and litigation if necessary. Lead Plaintiff ("Plaintiff") nonetheless alleges that these disclosures were misleading because Defendants did not publicly disclose the dollar amount of the IRS's proposed adjustments and contends that Defendants acted with an intent to defraud.

Defendants intend to assert a good faith reliance on counsel defense to address Plaintiff's scienter allegations and, as to the Individual Defendants, to support a good faith defense for the "control person" claim under Section 20(a), 15 U.S.C. § 78j(a). Defendants recognize that invoking this defense results in a privilege waiver of the subject matter of the advice on which Defendants intend to rely; in this case, legal advice concerning whether Defendants were under a duty to disclose the dollar amount of the IRS's proposed tax adjustments.

Before waiving privilege, however, Defendants move for a protective order defining the scope of such waiver. Defendants are otherwise placed in an untenable position: (i) waive privilege with the risk that ultimately the Court orders a broad waiver extending far beyond the legal advice that actually informed the disclosure decisions at issue in this case or (ii) abandon a critical defense to what they believe are meritless claims of securities fraud to avoid an irretrievable loss of their privilege. A protective order defining the scope of privilege waiver now avoids this catch-22 and

1

permits Defendants to make an informed decision about asserting the reliance on counsel and good faith defenses. Plaintiff will in no way be prejudiced because it will still receive the information needed to test the defense.

Defendants' concern about an overly-broad privilege waiver is not theoretical. Plaintiff is insisting on a sweeping waiver of privilege, including all legal advice regarding "the factual and legal bases of Amgen's dispute with the IRS," including assessments of "the strength of Amgen's position, the likelihood of prevailing, risk modeling, and exposure analyses." (ECF No. 103 at 3.) A waiver this broad would sweep in attorney work product and legal advice relating to the ongoing IRS dispute in Tax Court, which far exceeds the scope of Defendants intended waiver focused on legal advice regarding disclosing the risks associated with the IRS's proposed tax assessment. As the Court noted at the January 8th hearing, given the "gravity of the choice" Defendants have to make (Jan. 8 Hr'g Tr. 33), Defendants seek review of the scope of waiver before any privileged documents are produced.

This Court is authorized to rule on the scope of Defendants' intended privilege waiver now, before the production of any privileged documents. Under Rule 16 of the Federal Rules of Civil Procedure, this Court has explicit discretion to "control and schedule discovery," including by issuing protective orders under Rule 26(c). Fed. R. Civ. P. 16(c)(2)(F) and 26(c). Pursuant to these broad and flexible powers, courts can define (and have defined) the scope of waiver *ex ante* based on the parties' competing views of which privileged information is relevant to probing the defense. *See*, *e.g.*, *Apica Sellers Representative, LLC v. Abbott Lab'ys*, 2024 WL 5318651, at *1 (S.D.N.Y. Dec. 4, 2024) (Wang, M.J.) (deciding scope of subject matter waiver pre-production and then

2

offering defendant the option to produce or withdraw, in which case the "protective order will be moot and the documents and communications will remain privileged").[1]

Given the competing views on the scope of waiver in this case, the Court can and should enter an order protecting Defendants from having to disclose legal advice and attorney work product that ***did not*** inform their disclosure-related decisions. Courts have defined the scope of waiver to those communications that inform the client about the lawfulness of the disputed decision and therefore are "relevant" to the client's reliance on counsel defense. *See, e.g.*, *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992) (holding that defendants' "[a]ssertion of this [good faith] defense waived the privilege regarding only the advice of Simpson Thatcher, upon which the [defendants] claimed reliance" but not to advice received from "their in-house or retained counsel" because defendants "did not put forth [those] opinions . . . as a defense"). This ensures the waiver is no broader than necessary to allow the adversary to test the good faith and reasonableness of the specific defense, while preserving the core protections of privilege for unrelated legal advice. *See In re Grand Jury Procs.*, 219 F.3d 175, 188 (2d Cir. 2000) ("[W]aiver should be tailored to remedy the prejudice to the [opposing party]."). For these reasons, courts in securities matters construe a reliance of counsel defense as waiving privilege only over legal advice "relating to the accuracy of the disclosures" in securities filings. *In re Piedmont Off. Realty Tr. Inc. Sec. Litig.*, 2011 WL 13169494, at *7 (N.D. Ga. Oct. 27, 2011) (collecting cases).

The scope of Defendants' proposed waiver, which will include all legal advice Defendants received regarding disclosing the IRS's proposed preliminary tax adjustment figures (and discussions of the underlying IRS dispute, ***if*** part of that legal advice), fits comfortably in these

---

[1]    Unless noted, all emphasis is added and all internal citations, quotation marks and alterations are omitted for the reader's convenience.

precedents. Plaintiff's proposed scope, which includes unshared attorney work product and legal advice about the merits of the IRS dispute that are irrelevant to the disclosure decision, does not. Thus, the Court can and should construe Defendants' intended reliance on counsel defense as waiving privilege only over the legal advice that informed their decision not to disclose the IRS's proposed preliminary tax adjustments. And even if the Court decides that it can only define the scope of any waiver after the production of documents, which Defendants do not believe to be the case, it should still enter a protective order safeguarding Defendants' well-established right to withdraw the defense and claw back privileged materials.

Finally, the Court should enter an order pursuant to Rule 502(d) of the Federal Rules of Evidence confining any privilege waiver to this action, which Plaintiff does not oppose.

## STATEMENT OF RELEVANT FACTS

Under the U.S. tax code, multi-national corporations must use transfer pricing to allocate income among different jurisdictions. Amgen manufactured the majority of its products at its facility in Puerto Rico during the relevant time period (2010-2015) and, as required, used transfer pricing to allocate a portion of its profits to its Puerto Rican-operating entity. (ECF No. 34, Amended Complaint ("AC") ¶ 35.)

Although the IRS concurred with Amgen's transfer pricing methodology for tax years 2002-2009, it challenged the same methodology for tax years 2010-2012 and 2013-2015. (ECF 42-2, Ex. B to the Declaration of Tansy Woan (1Q22 Press Release) at 7.) After its audit of tax years 2010-2012—but before Amgen could pursue the administrative IRS appeals process for those tax years—the IRS provided Amgen with a NOPA and RAR, setting forth the **proposed** amounts the IRS claimed Amgen owed for the 2010-2012 tax years. These proposed amounts were non-final and remained subject to change during the IRS administrative appeals process; indeed, the IRS itself revised the proposed adjustment amount during this process. (ECF

4

42-3, Ex. C to the Declaration of Tansy Woan (2017 Form 10-K) at 31; *see also* AC ¶ 66 (alleging "Amgen received a modified RAR for the 2010-12 tax years that revised the IRS's calculation").) Amgen publicly described to shareholders the IRS's proposed adjustments as "significant," warned that the final resolution "could have a material impact on [Amgen's] results of operations and cash flows," and stated that it "disagree[d] with the proposed adjustments and plan[ned] to initiate the administrative appeals process" within the IRS. (ECF No. 63 at 7, 9.) Amgen made the same disclosures in connection with the 2013-2015 tax years.

Plaintiff contends that Defendants' disclosures of the IRS NOPAs and RARs were deliberately and materially misleading because they did not include the dollar amount of the adjustments being proposed by the IRS. (*See* AC ¶ 6.) Among other arguments, Defendants intend to defend against Plaintiff's scienter allegations by showing that they relied in good faith on legal advice that disclosure of the IRS's proposed preliminary adjustment figures was not required. Despite several meet-and-confer conferences, the parties were unable to agree on the scope of the privilege waiver resulting from the defense. After a conference on January 7, 2026, the Court ordered formal briefing on Defendants' application. (ECF No. 105.)

## ARGUMENT

**I.    THE COURT HAS AUTHORITY TO ENTER A PROTECTIVE ORDER DEFINING THE SCOPE OF WAIVER RESULTING FROM A GOOD FAITH RELIANCE ON COUNSEL DEFENSE.**

This Court possesses broad power and discretion under Rules 16 and 26 to manage discovery and issue protective orders, including orders defining the scope of a privilege waiver. Rule 16 explicitly authorizes the Court to "control[] and schedul[e] discovery," including by issuing "orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37."[2] Fed.

---

[2]    *See* ECF No. 70 (referring this action to Your Honor for "scheduling, discovery, non-dispositive pretrial motions and settlement").

R. Civ. P. 16(c)(2)(F). Rule 26, in turn, empowers the Court to issue orders protecting a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This list of protective orders is "non-exhaustive," allowing judges to tailor discovery and privilege issues to the needs of the case. *See* Wright & Miller's *Federal Practice & Procedure* § 2036 (3d ed. 1998); *see also Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (Ricardo, M.J.) ("Rule 26 gives a district court broad discretion to impose limitations or conditions on discovery which extends to granting or denying motions to compel or for protective orders on just terms.").

Pursuant to these broad and flexible powers, district courts often rule on disputes relating to the attorney-client privilege including, for example, the scope of a party's waiver of that privilege. Indeed, a district court "***must*** address the scope of the waiver" when a "waiver of attorney-client privilege or work product protection has occurred." *Novartis Pharma AG v. Incyte Corp.*, 778 F. Supp. 3d 637, 650 (S.D.N.Y. 2025) (Gorenstein, M.J.).

While the scope of any waiver is "decided . . . on a case-by-case basis," *see In re Grand Jury Procs.*, 219 F.3d at 183, it can be adjudicated ***before*** the production of documents. For example, in *Apica Sellers Representative, LLC v. Abbott Laboratories*, 2024 WL 5318651, at *1 (S.D.N.Y. Dec. 4, 2024), the parties disputed the scope of the defendant's planned subject matter waiver before the production of documents. Based on the parties' arguments alone, Magistrate Judge Wang entered a protective order limiting the scope of the potential privilege waiver to the subject matter of the legal advice. Magistrate Judge Wang then offered the defendant an option to produce privileged documents subject to her ruling on scope or withdraw the privilege waiver, in which case the "protective order will be moot, and the documents and communications will remain privileged." *Id.* at *2; *see also DC Comics v. Kryptonite Corp.*, 2002 WL 1303110, at *7 (S.D.N.Y. June 13, 2002) (granting protective order to define privilege

6

scope before the production of documents, but "if DC decides not to introduce any privileged documents or testimony, this protective order will be moot and the documents will remain privileged").

Magistrate Judge Wang's approach—scope first, then produce or withdraw—is supported by basic principles of fairness, which are heightened when one of the "oldest recognized privileges"[3] is at stake. It permits the waiving party "to make a fully-informed and intelligent decision whether to rely on advice of counsel with full knowledge of the consequences of the decision." *Motorola, Inc. v. Vosi Techs., Inc.*, 2002 WL 1917256, at *1 (N.D. Ill. Aug. 19, 2002) (describing the filing of a protective order "seeking a ruling on the scope of the waiver that will exist if it elects to rely on advice of counsel" as an "appropriate procedure"). Entry of a protective order also avoids a situation in which the waiving party is "unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims." *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003). In the context of the reliance on counsel defense specifically, this approach honors the privilege holder's express right to withdraw the defense if the waiver is ruled broader than expected. *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 2025 WL 2982003, at *6 (S.D.N.Y. Oct. 23, 2025) (Gorenstein, M.J.) ("accept[ing]" and "enforce[ing] defendants' choice not to present [reliance on counsel] defense" after ruling on waiver).

Contrary to Lead Plaintiff's position (*see* ECF No. 103 at 3), adjudicating the scope of waiver before the production of privileged materials is neither premature nor impractical. In *Apica*, Magistrate Judge Wang managed to define the scope of waiver *ex ante* based on the parties' competing views of which categories of privileged communications were relevant to the subject matter of the legal advice. Similarly, in *United States v. Locascio*, 357 F. Supp. 2d 536, 552 (E.D.N.Y. 2004), Judge Amon decided the scope of a privilege waiver before the defendant formally asserted a reliance on counsel defense.

---

[3]     *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

Noting that determining the contours of any waiver "becomes largely [an issue] of relevance" to the affirmative defense, the court applied the waiver to those communications "that shed light on whether reliance on counsel would have been reasonable and in good faith." *Id.*

The question of the scope of any waiver is just as timely here. Plaintiff asserts entitlement to privileged communications that extend far beyond the relevant disclosure advice, arguing that all advice regarding "the factual and legal bases of Amgen's dispute with the IRS" should be disclosed, including analysis of "the strength of Amgen's position, the likelihood of prevailing, risk modeling, and exposure analyses." (ECF No. 103 at 3.) Defendants, by contrast, believe the scope of the waiver should be defined as the "legal advice received on disclosing the IRS dispute" because the decision to disclose at a point in time is at issue in Plaintiff's claims. (ECF No. 99 at 4.) Setting aside the merits of these competing views, it is beyond dispute that the issue of *scope*—*i.e.*, which communications are relevant to Defendants' good faith reliance of counsel defenses—is ripe for the Court's consideration.

Thus, as these precedents demonstrate, this Court may issue a protective order defining the scope of waiver before the production of any privileged materials, which will afford Amgen the ability to intelligently decide whether to waive its attorney-client privilege.

## II.    THE COURT SHOULD ORDER THAT DEFENDANTS' WAIVER DOES NOT EXTEND TO LEGAL ADVICE AND WORK PRODUCT THAT DID NOT INFORM DEFENDANTS' DISCLOSURE DECISION.

The Court should limit the scope of Defendants' waiver to the legal advice upon which Defendants relied in deciding not to disclose the IRS's proposed preliminary tax adjustment figure. The scope of waiver resulting from the assertion of a good faith defense "should be formulated with caution," *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008), and "decided . . . on a case-by-case basis," in light of "the specific context in which the privilege is asserted," *In re Grand Jury Procs.*, 219 F.3d at 183. Thus, when a party invokes the reliance on counsel defense, courts will tailor the waiver to the "substance of the attorney's opinion," as well as "matters that are

8

addressed by the attorney's stated opinion." *In re Omnicom Grp., Inc.*, 233 F.R.D. 400, 413 (S.D.N.Y. 2006) (Dolinger, M.J.). This scope ensures that the non-waiving party may, as a matter of fairness, fully probe the merits of the good faith defense. *Id.*; *see also In re Grand Jury Procs.*, 219 F.3d at 188 ("[W]aiver should be tailored to remedy the prejudice to the [opposing party].").

But an advice of counsel privilege waiver is not boundless. While it applies to the legal advice upon which the client relied (and the subject matter of that advice), it does not extend to legal advice that did not inform the client's decision. The court in *Perry v. City of New York*, 2016 WL 11807719, at *6 (S.D.N.Y. Feb. 11, 2016), articulated the rationale for this rule. There, the court considered whether the FDNY's reliance on counsel defense waived privilege over the Law Department's internal work product relating to the underlying FLSA investigation. *Id.* at *6. The court declined to extend the waiver that far, holding that "internal Law Department deliberations" were outside the scope because they "would not inform the factfinder's inquiry into whether the decisionmakers at the FDNY" relied on counsel in good faith. *Id.*

Numerous courts in this district have applied the same reasoning, limiting the scope of waiver to those communications that informed the client about the lawfulness of the disputed decision and thus were **relevant** to the client's reliance on counsel defense. *See Locascio*, 357 F. Supp. 2d at 552 (describing the scope of waiver as "largely [an issue] of relevance" and extending it to communications that could "shed light" on whether the defendant reasonably relied on legal advice that his advertisements complied with FTC disclosure standards); *Cruden*, 957 F.2d at 972 (describing the scope of waiver as including "only the advice of Simpson Thatcher, upon which the [defendants] claimed reliance," but not including the advice from "their in-house or retained counsel" because "[the defendants] did not put forth [those] opinions . . . as a defense"); *SEC v. Honig*, 2021 WL 5630804, at *15 (S.D.N.Y. Nov. 30, 2021) ("[T]he scope of the implied waiver should

not include any communications between [a co-defendant] and [the co-defendant's] counsel, as they would not potentially undermine [the waiving defendant's] contentions of good faith."). Even Plaintiff appears to agree that relevance controls the scope of the waiver, citing *SEC v. Wyly*, 2011 WL 3366491, at *2 (S.D.N.Y. July 27, 2011) for the proposition that the "subject matter of an attorney-client communication must be tied at least in some way to the issues in the case and to the defendant's defense" to be waived. (ECF No. 103 at 3.)

Courts in securities fraud actions draw similar lines, construing a reliance of counsel defense as waiving privilege only over legal advice "relating to the accuracy of the disclosures" in securities filings. *In re Piedmont Off. Realty Tr. Inc. Sec. Litig.*, 2011 WL 13169494, at *8 (N.D. Ga. Oct. 27, 2011) (collecting cases); *see also In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403513, at *2 (C.D. Cal. Apr. 7, 2005) (waiver "extend[ed] only to those communications relating to the public statements at issue" as waiver "should be 'no broader than needed to ensure the fairness of the proceedings'" (citation omitted)); *Silverman v. Motorola, Inc.*, 2010 WL 2697599, at *4 (N.D. Ill. July 7, 2010) (similar). These courts decline to broaden the waiver to privileged communications about the underlying subject matter of the disclosure, which would be "too far removed" from the legal advice concerning the lawfulness of the disclosure itself and thus not relevant to "show the defendants' good faith and state-of-mind" in relying on counsel. *Piedmont*, 2011 WL 13169494, at *8. In *Piedmont*, for example, the court confined the privilege waiver to legal advice about whether the disclosures were accurate, and "documents showing whether the defendants were advised by their attorneys to make additional disclosures," ***but not*** attorney-client communications relating to Piedmont's "underlying business activities" discussed in the disclosures. *Id.* at *8.

The scope of Defendants' proposed waiver fits within these precedents. Defendants intend to address Plaintiff's scienter allegations and assert defenses to control person liability by

10

demonstrating that they relied in good faith on legal advice that the IRS's proposed adjustment dollar amounts did not need to be disclosed, as they were, among other reasons, preliminary and adequately disclosed qualitatively with characterizations such as "substantial" and "material." Accordingly, Defendants will produce **all** privileged communications concerning the legal advice they received addressing the disclosure of the proposed adjustment dollar amounts. And as a matter of fairness and completeness, Defendants will also disclose any privileged communications or documents that discuss the merits of the underlying IRS dispute to the extent they are included with the legal advice regarding the disclosures at issue. These materials will "remedy the prejudice" to Plaintiff by allowing it to review all the privileged information Defendants considered in making their disclosure decisions and probe whether Defendants reasonably and in good faith relied on the advice of counsel. *In re Grand Jury Procs.*, 219 F.3d at 188.

In support of unfettered access to Defendants' privileged materials, Plaintiff argues that **all** "legal advice regarding the factual and legal bases of Amgen's dispute with the IRS, including the strength of Amgen's position, the likelihood of prevailing, risk modeling, and exposure analyses are relevant to scienter and Amgen's disclosure obligations, and are therefore within the scope of the waiver and should be disclosed." (ECF No. 103 at 3.) The Court should reject this position.

First, until now, Plaintiff has never alleged or argued that the merits of the underlying IRS litigation are relevant at all, much less to scienter. To the contrary, Plaintiff's core claim is that Defendants failed at the outset to disclose the specific dollar amounts of the IRS's proposed preliminary tax adjustments, regardless of Amgen's likelihood of prevailing before the U.S. Tax Court. (*See* AC ¶¶ 6, 66, 68, 104, 120.)

Second, assessments of the merits of the IRS litigation are not relevant **on their own** to Defendants' reliance on counsel defense. As discussed above, Defendants intend to assert that they

11

relied on legal counsel in deciding not to disclose the preliminary tax adjustments. Thus, they will disclose the legal advice they received concerning "the accuracy or inaccuracy of the allegedly misleading public statements." *Piedmont*, 2011 WL 13169494, at *7. But privileged assessments of the underlying IRS litigation are, by themselves, "too far removed" from the legal advice that informed Defendants about the lawfulness of their public disclosures. *Id.* at *8. It is only when such privileged assessments were included in disclosure-related legal advice that they become relevant to Defendants' reliance on counsel defense—and will be produced.

The court's decision in *In re Perrigo Co. PLC Securities Litigation*, 2020 WL 7251277 (S.D.N.Y. Dec. 8, 2020) (ECF No. 103 at 3), does not suggest a contrary result. Judge Cote's ruling in *Perrigo* was limited to the context of that dispute and that defense, which differ significantly from the dispute and defense here. In *Perrigo*, the defendant did not dispute that its disclosure obligations "depended entirely on an evaluation of the merits" of an Irish Revenue audit and that it chose not to disclose the assessment solely "because counsel advised [the defendant] that it would prevail on the merits in its dispute with Irish Revenue." *Id.* at *1-2. Based on that admission, Judge Cote held that if the defendant asserted that it relied on counsel in making its disclosures, the privilege waiver must extend to include "advice it received about the merits of the tax assessment," which necessarily informed those disclosures. *Id.* at *2. By contrast, Defendants here have never suggested, much less conceded, that their disclosure decisions "depended entirely on an evaluation of the merits" of the underlying IRS litigation. Thus, unlike in *Perrigo*, it does not follow that all "legal advice regarding the factual and legal bases of Amgen's dispute with the IRS" (ECF No. 103 at 3), is relevant to Defendants' reliance on counsel defense. In any event, to the extent that Amgen's legal advice regarding disclosures entailed any "evaluation of the merits" of the IRS litigation, Defendants have agreed to produce such advice.

Finally, in demanding legal advice regarding the "strength of Amgen's position" and the "likelihood of prevailing" in the ongoing IRS litigation, Plaintiff's proposed scope improperly includes sensitive attorney work product and litigation advice that did not inform its disclosure decisions. As previously noted, to the extent Defendants' disclosure-related legal advice did in specific circumstances rely on work product, it will be produced. But Defendants' waiver should not extend to "work-product not communicated to the client" or work product that, while transmitted to "someone in [Amgen's] employ" did not assist in informing the disclosure decision. *In re Grand Jury Procs.*, 219 F.3d at 192.

III.    **IF THE COURT DOES NOT DEFINE THE SCOPE OF WAIVER NOW, IT SHOULD ENTER AN ORDER THAT FACILITATES THE PRODUCTION OF DOCUMENTS WHILE PRESERVING DEFENDANTS' ABILITY TO WITHDRAW THE DEFENSE AND CLAW BACK ANY PRIVILEGED MATERIALS.**

If the Court decides that it can only define the scope of privilege waiver after the production of waived documents, it should enter a protective order safeguarding Defendants' right to withdraw the defense and claw back any privileged materials, which Plaintiff appears ready to oppose. Specifically, as an alternative approach, the Court should enter an order providing that:

1. Defendants will produce all documents they believe are within the scope of waiver resulting from their good faith reliance on advice of counsel defense;

2. The parties will meet and confer and, if necessary, litigate the scope of privilege waiver using produced documents in the record and *in camera* review of disputed documents, if necessary; and

3. Should the Court define the scope of waiver broader than Defendants' proposal, Defendants will have the right to withdraw the defense and claw back privileged documents, which right cannot be altered by any claim of prejudice.

While this approach is not necessary, and poses more risk and prejudice to Defendants, it is the only fair alternative. Among other things, it prevents Plaintiff from interfering with Defendants' right to withdraw the defense by claiming prejudice, if the Court should hold the scope of waiver broader than Defendants intended, while allowing the parties to brief the waiver issue using the documents Plaintiff claims it needs. Courts in this District have implemented similarly

13

phased protocols before. *See PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027566, at *8 (S.D.N.Y. Dec. 30, 2022) (Moses, M.J.); *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 522 (S.D.N.Y. 2002) (Gorenstein, M.J.).

In meet and confer discussions, Plaintiff was focused on denying Defendants the ability to raise a meaningful advice of counsel defense. First, Plaintiff argued that Defendants should not be permitted to withdraw the reliance on counsel defense once Defendants have begun to produce privileged material in connection with the defense. The law says otherwise. "As long as the adversary is not prejudiced, there is no reason to compel a party to maintain claims or defenses that it wishes to abandon." *Madanes v. Madanes*, 199 F.R.D. 135, 152 (S.D.N.Y. 2001). For this reason, courts routinely permit litigants to withdraw their good faith reliance on counsel defense. *See, e.g.*, *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, 2019 WL 2724269, at *5 (S.D.N.Y. July 1, 2019) (Pitman, M.J.) (allowing defendant to reconsider its assertion of the defense "[g]iven the seriousness of a finding of waiver and the absence of prejudice to Keurig if JBR withdrew the defense that gives rise to the waiver"). Plaintiff cannot credibly claim prejudice if Defendants withdraw the defense because, given that fact discovery will not close until July 25, 2026, Plaintiff will have ample time to adjust its discovery strategy if need be.

Second, Plaintiff argued that there is no authority allowing Defendants to claw back documents for which privilege was waived. To the contrary, courts can invoke Rule 502 of the Federal Rules of Evidence to facilitate a claw back of even intentionally waived documents. *See Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (Maas, M.J.) (Rule 502(d) gives a party "the right to claw back the minutes, no matter what the circumstances giving rise to their production"). In any event, pursuant to its powers to "be as

14

inventive as the necessities of a particular case require," the Court can (and should) order the return of privileged documents for which Plaintiff would have no legitimate use. Wright & Miller § 2036.

## IV.    THE COURT SHOULD ENTER AN ORDER LIMITING DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY UNDER FRE 502(d).

Finally, the Court should enter an order limiting any privilege waiver to this action alone. Rule 502(d) of the Federal Rules of Evidence "permits such cabined waivers," *SEC v. Bank of Am. Corp.*, 2009 WL 3297493, at *1 (S.D.N.Y. Oct. 14, 2009), and courts enter them to ensure that a privilege waiver does not spill over into other matters or into the hands of other parties. *See id.* (granting protective order that "would allow the [defendant] to waive attorney-client privilege . . . without thereby waiving such privilege and protection regarding other information that may be of interest in related private lawsuits"). During the meet-and-confer process and the discovery conference before the Court, Plaintiff stated that it did not object to this relief (which makes sense given the ongoing Tax Court litigation in which Amgen is involved). (Hr'g Tr. at 32.) Thus, because the Court is empowered to confine any privilege waiver to this case alone and Plaintiff does not oppose such requested relief, the Court should enter an order pursuant to Federal Rule of Evidence 502(d) confining any privilege waiver solely to this case.

## CONCLUSION

For the foregoing reasons, Defendants request the Court enter (A) a protective order under Federal Rule of Civil Procedure 26 defining the scope of the privilege waiver and (B) an order under Federal Rule of Evidence 502(d) limiting Defendants' privilege waiver to this action only.

15

Dated: New York, New York
      January 28, 2026

Respectfully submitted,


*/s/ Jay B. Kasner*
Jay B. Kasner
Tansy Woan
Michael W. Restey Jr.
Jacob G. Lefkowitz
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Jay.Kasner@skadden.com
Tansy.Woan@skadden.com
Michael.Restey@skadden.com
Jacob.Lefkowitz@skadden.com

Peter Morrison
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, CA 90067
Peter.Morrison@skadden.com

*Attorneys for Defendants Amgen Inc., Robert*
  *A. Bradway and Peter H. Griffith*

**PAGE AND WORD COUNT CERTIFICATION**

I, Jay B. Kasner, hereby certify that the foregoing memorandum of law complies with: (i) the page limits proposed in Defendants' Letter requesting full briefing, which was approved by Your Honor's January 8, 2026 Order (ECF No. 105); and (ii) the word count limitations set forth in Rule II.E of Your Honor's Individual Rules and Practices for Civil Cases, and contains 4,986 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and this certificate.

Dated: New York, New York

      January 28, 2026

/s/ Jay B. Kasner

Jay B. Kasner