UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| | x |
| In re AMGEN INC. SECURITIES LITIGATION | : Civil Action No. 1:23-cv-02138-JPC-HJR<br>:<br>:x  <u>CLASS ACTION</u> |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..........................................................4

III.    RELEVANT LAW ..........................................................................................................5

     A.    The Advice of Counsel Defense ...............................................................................5

     B.    The Prohibition on Advisory Opinions in Discovery .............................................6

IV.    ARGUMENT...................................................................................................................7

     A.    The Court Should Deny Defendants' Request to Limit the Scope of Their
          Waiver Before Any Documents Have Been Produced Because the Order
          Would Be an Improper Advisory Opinion...............................................................7

     B.    The Court Should Find that Defendants Have Waived Privilege Over the
          Merits Materials if the Court Issues Any Order on Scope.....................................12

          1.    The Amended Complaint Expressly Alleges Amgen Downplayed
                the Merits of the IRS Dispute ....................................................................13

          2.    The Merits of the Underlying IRS Dispute Are Directly Relevant
                to the Good Faith of Defendants' Reliance on Counsel's Advice .............15

     C.    Defendants Cannot Claw Back Documents They Voluntarily Produced
          Pursuant to Waiver..................................................................................................20

     D.    The Court Lacks Authority to Enter an Order Limiting Defendants'
          Privilege Waiver to Only this Action Under Rule 502(d) ....................................23

V.    CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alter Domus, LLC v. Winget*,
2024 WL 4541554
(E.D. Mich. Oct. 22, 2024) ................................................................................................23

*Apica Sellers Representative, LLC v. Abbott Laboratories*,
2024 WL 5318651
(S.D.N.Y. Dec. 4, 2024)......................................................................................................10

*Arista Records, LLC v. Lime Grp. LLC*,
2011 WL 1642434
(S.D.N.Y. Apr. 20, 2011).................................................................................................6, 7

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
1995 WL 598971
(S.D.N.Y. Oct. 11, 1995) ...................................................................................................12

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) .......................................................................................10, 11

*Bowne of New York City, Inc. v. AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) .......................................................................................21

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*,
2013 WL 142503
(S.D.N.Y. Jan. 7, 2013)......................................................................................................23

*Coleco Indus., Inc. v. Universal City Studios, Inc.*,
110 F.R.D. 688 (S.D.N.Y. 1986) .......................................................................................16

*Curto v. Med. World Commc'ns, Inc.*,
783 F. Supp. 2d 373 (E.D.N.Y. 2011) ...............................................................................21

*DC Comics v. Kryptonite Corp.*,
2002 WL 1303110
(S.D.N.Y. June 13, 2002)....................................................................................................10

*Freeman v. Giuliani*,
2024 WL 5202554
(S.D.N.Y. Dec. 23, 2024)....................................................................................................17

*Glenmede Trust Company v. Thompson*,
56 F.3d 476 (3d Cir. 1995)..................................................................................................12

**Page**

*Golden v. Zwickler*,
394 U.S. 103 (1969) ............................................................................................................6

*Han v. Fin. Supervisory Serv.*,
2017 WL 7689223
(S.D.N.Y. Oct. 6, 2017) *report and recommendation adopted*,
2018 WL 791353
(S.D.N.Y. Feb. 8, 2018) ..................................................................................................6, 7

*Hostetler v. Dillard*,
2014 WL 6871262
(S.D. Miss. Dec. 3, 2014) ..................................................................................................23

*In re Actos Antitrust Litig.*,
628 F. Supp. 3d 524 (S.D.N.Y. 2022) ................................................................................9

*In re Buspirone Patent Litigation*,
210 F.R.D. 43 (S.D.N.Y. 2002) ..........................................................................7, 8, 10, 15

*In re Gaming Lottery Sec. Litig.*,
2000 WL 340897
(S.D.N.Y. Mar. 30, 2000) .................................................................................................16

*In re Perrigo Co. PLC Sec. Litig.*,
2020 WL 7251277
(S.D.N.Y. Dec. 8, 2020) ........................................................................................... *passim*

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) ........................................................................................17

*In re Sealed Case*,
676 F.2d 793 (D.C. Cir. 1982) ..................................................................................... 16-17

*In re Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993) ..................................................................................................21

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987) ..................................................................................................9

*Kleinman v. Elan Corp.*,
706 F.3d 145, 153 (2d Cir. 2013) ......................................................................................14

*Local 851 of Int'l Bd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*,
36 F. Supp. 2d 127 (E.D.N.Y. 1998) .................................................................................21

**Page**

*Loguidice v. McTiernan*,
  2018 WL 4011584
  (N.D.N.Y. Aug. 22, 2018) ........................................................................................21

*Markowski v. SEC*,
  34 F.3d 99 (2d Cir. 1994).............................................................................................6

*Matsushita Elecs. Corp. v. Loral Corp*,
  1995 WL 527640
  (S.D.N.Y. Sep. 7, 1995) ..........................................................................................9, 15

*Potomac Elec. Power Co. & Subsidiaries v. United States*,
  107 Fed. Cl. 725 (2012) ...............................................................................................23

*S.E.C. v. Bank of America Corporation*,
  2009 WL 3297493
  (S.D.N.Y. Oct. 14, 2009) .............................................................................................24

*S.E.C. v. Lek Sec. Corp.*,
  2019 WL 5703944
  (S.D.N.Y. Nov. 5, 2019) .............................................................................................6, 7

*S.E.C. v. O'Meally*,
  2010 WL 3911444
  (S.D.N.Y. Sep. 29, 2010) ........................................................................................5, 6, 15

*S.E.C. v. Wyly*,
  2011 WL 3366491
  (S.D.N.Y. July 27, 2011) ...........................................................................................9, 18

*Smith v. Best Buy Stores, L.P.*,
  2017 WL 3484158
  (D. Idaho Aug. 14, 2017) .............................................................................................23

*Stollman v. Williams*,
  2022 WL 1772552
  (S.D.N.Y. June 1, 2022)................................................................................................7

*Thomas v. Marshall Pub. Schs.*,
  690 F. Supp. 3d 941 (D. Minn. 2023)..........................................................................23

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991).............................................................................. *passim*

**Page**

*United States v. Denkberg*,
139 F.4th 147 (2d Cir. 2025) ......................................................................................15

*United States v. Fruehauf*,
365 U.S. 146 (1961)........................................................................................................7

*United States v. Locascio*,
357 F. Supp. 2d 536
(E.D.N.Y. 2004).................................................................................................10, 11, 16

*United States v. Ray*,
2021 WL 5493839
(S.D.N.Y. Nov. 22, 2021) ........................................................................................ 20-21

*United States v. Schulte*,
2020 WL 133620
(S.D.N.Y. Jan. 13, 2020)...........................................................................................5, 7

*Vicinanzo v. Brunschwig & Fils, Inc.*,
739 F. Supp. 891 (S.D.N.Y. 1990) ..............................................................................6

*XY, LLC v. Trans Ova Genetics, Lc*,
2018 WL 11000694
(D. Colo. May 14, 2018) ...............................................................................3, 21, 22, 23

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Evidence Rule
Rule 502(a)....................................................................................................................22
Rule 502(d) ......................................................................................................... *passim*

Lead Plaintiff Asbestos Workers Philadelphia Pension Fund ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' Memorandum of Law in Support of Their Motion for (A) a Protective Order Defining the Scope of Privilege Waiver Arising from Defendants' Good Faith Reliance on Counsel Defense and (B) an Order Limiting Defendants' Privilege Waiver to this Action Only (ECF No. 112) (the "Motion").

## I.    INTRODUCTION

A defendant raising an advice of counsel defense cannot use privilege as both sword and shield. In exchange for a potentially significant affirmative defense, the defendant must waive attorney-client privilege and work-product protection. In doing so, a defendant bears the burden of establishing non-waiver as the party asserting privilege. Yet Defendants seek to sidestep their burden by asking the Court to blindly limit the scope of any privilege waiver without reviewing a single communication, document, or memorandum—and without affording Plaintiff any opportunity to review these materials or argue its position to the Court. Defendants then ask for the right to claw back any materials if their advice of counsel defense unearths unhelpful documents, and for a nationwide order limiting waiver to just these proceedings. Defendants seek to turn the rules governing the reliance on counsel defense and waiver of privilege on their heads. Courts across the country have repeatedly rejected exactly the type of relief Defendants seek for multiple reasons.

First, Defendants seek an improper advisory opinion. Federal courts have repeatedly rejected attempts by defendants—just like those here—to limit the scope of any waiver relating to an advice of counsel defense prior to the production of discovery. As these courts have roundly held, the scope of the waiver depends on the particularized documents responsive to any such defense and the context of the actual factual disputes that are placed at issue. Allowing Defendants to selectively define the scope of their advice of counsel defense, and thereby the scope of

discovery, would undermine the purpose behind the exception to the attorney-client and work-product privileges at issue here—fairness.

Second, even if Defendants' Motion is ripe—it is not—the scope of waiver is broader than sought by Defendants, who attempt to artificially narrow the scope of their privilege waiver. In addition to the categories Defendants concede are waived, any waiver also extends, at a minimum, to materials discussing the merits of the underlying IRS dispute and the setting of Amgen's reserves. Defendants are wrong that "Plaintiff has never alleged or argued that the merits of the underlying IRS litigation are relevant at all, much less to scienter." Mot. at 11. The Amended Complaint expressly alleges Defendants violated the Securities Exchange Act of 1934 (the "Exchange Act") not only by failing to quantify the amount of money sought by the IRS, but also by minimizing the merits of the IRS' tax dispute. *See, e.g.*, Plaintiff's Amended Complaint (cited as "¶" or "¶¶") (ECF No. 34), ¶¶114, 148, 198, 200, 212. Judge Cronan further expressly credited these allegations in his order denying Defendant's motion to dismiss, stating Plaintiff "has adequately pleaded that Defendants had a duty to disclose the $10.7 billion figure ***or otherwise inform investors as to the true extent of Amgen's potential liability***…" ECF No. 63 at 21.[1]

Moreover, the merits of the underlying IRS dispute and the setting of Amgen's reserves are directly relevant to whether Defendants relied in good faith on counsel's advice. If counsel told Defendants that Amgen faced serious litigation risks in the underlying tax dispute, this information would be highly relevant to whether Defendants relied in good faith on counsel's advice about the adequacy of their public disclosures regarding the IRS audits and the potential risks to the Company. Indeed, Judge Cote reached the same conclusion in rejecting a nearly identical argument as Defendants raise here, finding that "as a theoretical matter, any advice about disclosure is

---

[1] All emphasis is added unless otherwise noted.

contingent on an analysis of the merits of the [tax] audit." *In re Perrigo Co. PLC Sec. Litig.*, 2020 WL 7251277, at \*1 (S.D.N.Y. Dec. 8, 2020). Were that not enough, Defendants repeatedly defended the adequacy of their disclosures on earnings calls during the Class Period by attacking the merits of the IRS dispute—thus drawing the link themselves between the merits and the disclosures. *See, e.g.*, ¶200. Furthermore, even though it is clear at this stage that these additional materials relate to Defendants' reliance on counsel defense, the Court should refuse to limit the scope of waiver now because discovery may reveal other areas highly relevant to Defendants' defense as well.

Third, the Court should reject Defendants' requests to allow them to claw back materials should their defense unearth unfavorable evidence and for the Court to issue a nationwide order limiting any waiver to only this action. Courts throughout the country have repeatedly held that defendants cannot claw back materials after they strategically and selectively waive privilege because it "is inconsistent with the foundational tenets of the attorney-client privilege." *XY, LLC v. Trans Ova Genetics, Lc*, 2018 WL 11000694, at \*6 (D. Colo. May 14, 2018). Likewise, after further research by Plaintiff, it is clear that Federal Rule of Evidence ("Rule") 502(d) does not permit the Court to limit waiver to only this action. The rule plainly states that the Court only has authority to proscribe other judges *if* it finds that the privilege has *not* been waived in the pending litigation. *See* Fed. R. Evid. 502(d). That is not the case here. The advice of counsel defense requires the waiver of any privileged materials related to the defense. Once a waiver is effectuated, the Court has no power under Rule 502(d) to prevent other litigants from accessing such materials in federal or state proceedings.

Accordingly, Plaintiff respectfully submits the Court should deny Defendants' Motion as unripe and enter the Proposed Order attached to the Declaration of Evan J. Kaufman in Support of

Plaintiff's Opposition to Defendants' Motion for a Protective Order (the "Kaufman Decl.") as Exhibit 1. The Proposed Order finds, at this time, that privilege has been waived to those categories that Defendants believe are within the scope of the waiver and that these materials must be produced should Defendants proceed with their defense. *See* Mot. at 10-11. The Proposed Order defers deciding the scope of Defendants' advice of counsel defense until after Plaintiff has had an opportunity to review these materials and brief the Court on whether privilege over additional subject areas (collectively, the "Merits Materials") has also been waived by Defendants' advice of counsel defense.

In the alternative, if the Court finds that Defendants' Motion is ripe, Plaintiff respectfully submits the Court should enter the Alternate Proposed Order attached to the Kaufman Decl. as Exhibit 2. The Alternate Proposed Order finds that Defendants have waived privilege relating to both the materials Defendants believe are within the scope of the waiver as well as the Merits Materials, and that Defendants should produce those materials.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Amended Complaint alleges that by the start of the Class Period, the IRS informed Amgen it owed approximately $10.7 billion in back taxes and penalties due to its improper use of transfer pricing to lower its income taxes and increase net income. ¶¶5, 6. While Defendants publicly disclosed some information about the IRS' findings, they misrepresented material facts concerning the nature of the dispute with the IRS and failed to adequately inform investors of its magnitude and potential risks to the Company. ¶¶6, 114, 148, 198, 200, 212. On September 30, 2024, Judge Cronan denied Defendants' motion to dismiss the Amended Complaint, holding that Defendants "understated and obfuscated the true nature of the IRS dispute" and failed to "disclose[] the full degree of the potential liability" to the IRS. ECF No. 63 at 10, 36. The parties are currently engaged in discovery. In answering the Amended Complaint,

Defendants asserted that they "relied in good faith on the . . . advice of others upon which they were entitled to rely, including both internal and external advisers." ECF No. 69 at 48.

Despite raising this good faith defense in their Answer, Defendants repeatedly told Plaintiff during the parties' discovery conferrals that Defendants were not asserting the advice of counsel defense. Then, after nearly a year of discovery, Defendants reversed course during the November 17, 2025 meet-and-confer. Defendants further stated they would not produce a privilege log or documents subject to the waiver unless Plaintiff signed a draft stipulation limiting the scope of waiver. Plaintiff declined because it could not reasonably determine the scope of the waiver without first reviewing materials reasonably related to counsel's advice.

Defendants responded by filing a surprise letter motion with the Court seeking a protective order on December 29, 2025. ECF No. 100. On January 8, 2026, the Court held a Discovery Conference to address Defendants' anticipated Motion. Following the Discovery Conference, the Court ordered Defendants to produce their overdue privilege log by January 22, 2026. ECF No. 105. After yet another extension, Defendants produced their privilege log on January 28, 2026 listing over *14,000 documents* withheld. Defendants have withheld nearly as many documents on the basis of privilege as they produced to Plaintiff.

Defendants filed their Motion on January 28, 2026 seeking to prevent Plaintiff from reviewing any documents other than those pre-selected by Defendants.

## III.   RELEVANT LAW

### A.   The Advice of Counsel Defense

The advice of counsel is not a complete defense to a securities claim. *See S.E.C. v. O'Meally*, 2010 WL 3911444, at *4 (S.D.N.Y. Sep. 29, 2010). Nonetheless, a defendant raising such a "defense is seeking significant *pretrial* relief." *United States v. Schulte*, 2020 WL 133620, at *5 (S.D.N.Y. Jan. 13, 2020). To prevail on an advice of counsel defense in a securities case, "a

- 5 -

defendant must show (1) that he made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith." *O'Meally*, 2010 WL 3911444, at *4 (citing *Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir. 1994)). The attorney-client privilege, however, "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also Perrigo*, 2020 WL 7251277, at *2 (quoting *Bilzerian*, 926 F.2d at 1292) ("[c]ourts have thus sought to prevent litigants from wielding the attorney-client privilege both 'as a shield and a sword' through the advice of counsel defense"). "Reliance on the advice of counsel cannot be asserted while simultaneously denying access to the very advice that formed the supposed good faith belief that the conduct was legal." *S.E.C. v. Lek Sec. Corp.*, 2019 WL 5703944, at *3 (S.D.N.Y. Nov. 5, 2019). "Accordingly, a party who intends to rely at trial on the advice of counsel must make a *full disclosure during discovery*; failure to do so constitutes a waiver of the advice-of-counsel defense." *Id.* (quoting *Arista Records, LLC v. Lime Grp. LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011)); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894 (S.D.N.Y. 1990) (holding same).

### B.    The Prohibition on Advisory Opinions in Discovery

"[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Han v. Fin. Supervisory Serv.*, 2017 WL 7689223, at *5 (S.D.N.Y. Oct. 6, 2017), *report and recommendation adopted*, 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). "[S]uch advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give." *Id.* (quoting *United*

*States v. Fruehauf*, 365 U.S. 146, 157 (1961)). As such, "the federal courts frequently invoke the advisory opinion rule when declining to provide advance decisions as to discovery or evidentiary disputes which are not yet ripe and which therefore lack the 'clear concreteness provided when a question emerges precisely framed and necessary for decision.'" *Id.* (quoting *Fruehauf*, 365 U.S. at 157).

## IV.    ARGUMENT

### A.    The Court Should Deny Defendants' Request to Limit the Scope of Their Waiver Before Any Documents Have Been Produced Because the Order Would Be an Improper Advisory Opinion

An advice of counsel defense seeks "significant *pretrial* relief," *Schulte*, 2020 WL 133620, at *5, that requires Defendants to "make a full disclosure during discovery." *Lek Sec.*, 2019 WL 5703944, at *3 (quoting *Arista*, 2011 WL 1642434, at *2). Defendants further bear the burden of establishing non-waiver as the proponent of the privilege. *Stollman v. Williams*, 2022 WL 1772552, at *4 (S.D.N.Y. June 1, 2022) (Cronan, J.). Yet Defendants ask the Court to blindly limit the scope of any privilege waiver without reviewing a single communication, document, or memorandum—and without affording Plaintiff any opportunity to review these materials and take a meaningful position on the waiver's scope. The relief Defendants seek is the definition of an advisory opinion. *See, e.g.*, *Bilzerian*, 926 F.2d at 1293 (affirming district court's refusal to give defendant "an advisory ruling in advance, assuring that the attorney-client privilege would not be waived regardless of what developed in his direct testimony").

Courts have repeatedly rejected the type of blind advisory opinion Defendants request here. In *In re Buspirone Patent Litigation*, the defendant asked the magistrate judge to limit the scope of any waiver relating to an advice of counsel defense prior to the production of any materials. 210 F.R.D. 43, 53 (S.D.N.Y. 2002). The magistrate judge rejected the request because "he could not decide in the abstract that all documents . . . would necessarily be undiscoverable if [the defendant]

- 7 -

were to place its reliance on the advice of counsel at issue." *Id.* The defendant filed objections, and Judge Koeltl affirmed the magistrate judge's ruling, finding that "[i]t is not reasonable to request the kind of blanket clarifications that [defendant] seeks." *Id.* Specifically, the court reasoned that whether documents fall within the scope of waiver resulting from an advice of counsel defense "will likely depend in part on the kind of advice-of-counsel defense that [defendant] raises, if any, the particularized documents responsive to any such defense, and/or review, in some instances, of the requested documents themselves within the context of the actual factual disputes that are placed at issue." *Id.* As a result, a defendant "cannot in fairness try to tailor an advice-of-counsel defense in an unfairly prejudicial way, so as to provide all the documents . . . which may tend to support [defendant's] positions in this litigation, while categorically excluding any such documents thereafter, which may tend to show that [the defendant] thereafter pursued the challenged conduct in bad faith or against the advice of counsel." *Id.*

The principles set forth in *Buspirone Patent Litigation* apply with equal force here. It is not reasonable for the Court to blindly rule on Defendants' blanket request, given that the scope of the waiver will depend on "the particularized documents responsive to any such defense, and/or review, in some instances, of the requested documents themselves within the context of the actual factual disputes that are placed at issue." *Buspirone Pat. Litig.*, 210 F.R.D. at 53. These disputes include, for instance, what information counsel relied on when opining about the adequacy of the Defendants' disclosures, the substance of counsel's communications with Defendants regarding the disclosures, whether Defendants and their counsel discussed or considered that their disclosure obligations and the merits of the IRS dispute were intertwined, the information Defendants gave their counsel regarding the merits of the IRS dispute, whether the potential liabilities from the IRS dispute were accounted for in Amgen's reserves, and what Defendants and their counsel knew or

- 8 -

believed about the strength of their position. Moreover, if counsel's advice "was in part oral . . . there will inevitably be some question as to what the attorney actually told the client." *Matsushita Elecs. Corp. v. Loral Corp*, 1995 WL 527640, at \*2 (S.D.N.Y. Sep. 7, 1995). "In such a case, the materials considered by the attorney in rendering that advice may be quite useful in seeking to unearth the precise substance and scope of the attorney's advice." *Id*.

This list is also not exhaustive—nor can it be—because Plaintiff has not yet been afforded an opportunity to review a single document subject to waiver. Plaintiff and the Court do not know what we do not know.

Defendants' arguments to the contrary are not persuasive. Defendants assert "they would risk an irreversible loss of privilege should the scope later be deemed broader than Defendants anticipated." *See* Ltr. Mot. at 4. But *every* defendant that raises an advice of counsel defense risks that the scope of such defense may be broader than anticipated. "It has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut." *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987); *see also In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 534-36 (S.D.N.Y. 2022) (holding that once a party asserts an advice of counsel defense, fairness may require a broader scope than defendants intended); *S.E.C. v. Wyly*, 2011 WL 3366491, at \*3 (S.D.N.Y. July 27, 2011) (asserting an advice of counsel defense results in privilege waiver of subject matter that is "tied at least in some way to the issues in the case and to the defendant's defense."). Any so-called "prejudice" to the Defendants is the ordinary consequence of *their* strategic decision to assert an advice of counsel defense that places privileged communications at issue. Because Defendants' defense is potentially a double-edged sword does not permit them to

also wield it as a shield to prevent production of potentially unfavorable materials. *Bilzerian*, 926 F.2d at 1292.

Defendants are wrong that "Plaintiff will in no way be prejudiced because it will still receive the information needed to test the defense." Mot. at 2. Defendants assert this *ipse dixit* without any explanation. The reality is that the scope of any waiver derives directly from the advice of counsel defense Defendants assert, the documents related to the defense, and the factual issues raised by the defense. *Buspirone Pat. Litig.*, 210 F.R.D. at 53. Plaintiff cannot meaningfully test Defendants' reliance on counsel defense without being able to review all materials potentially relevant to such defense—including the merits of Amgen's underlying IRS dispute.

Furthermore, Defendants' reliance on *Apica Sellers Representative, LLC v. Abbott Laboratories*, 2024 WL 5318651, at *1 (S.D.N.Y. Dec. 4, 2024) and *DC Comics v. Kryptonite Corp.*, 2002 WL 1303110, at *5 (S.D.N.Y. June 13, 2002) is misplaced. *Apica* and *DC Comics* are neither relevant nor support Defendants' position because the plaintiffs there did not argue it was premature for the courts to adjudicate the attorney-client privilege waiver. Instead, *Apica* and *DC Comics* involved contract disputes, and the parties disagreed about whether the waiver of privilege should extend past the effective date of the parties' agreement. The courts and parties did not need to review any additional materials because, as a matter of law, "Defendant's unilateral post-execution interpretation of the contract is simply not probative of the parties' intent during the negotiation of the [agreement]." *Apica*, 2024 WL 5318651, at *2; *see also DC Comics*, 2002 WL 1303110, at *6 ("DC's proposed closing date of the privilege waiver is logical. The proposed window closes on . . . the date the Agreement was signed by DC").[2]

---

[2] Likewise, Defendants' reliance on criminal prosecutions—*Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003) and *United States v. Locascio*, 357 F. Supp. 2d 536, 551 (E.D.N.Y. 2004)—are also misplaced. *Bittaker* involved an ineffective assistance of counsel claim. The court found

Here, on the other hand, blindly limiting the scope of any privilege waiver without reviewing a single communication, document, or memorandum—and without affording Plaintiff any opportunity review these materials or argue its position to the Court—is unsupported by the case law, contrary to holdings directly on point, and essentially grants Defendants litigation strategy insurance through an improper declaratory ruling. This relief would be highly prejudicial to Plaintiff and should be denied by the Court.

Accordingly, Plaintiff respectfully submits the Court should deny Defendants' Motion as unripe and enter the Proposed Order attached to the Kaufman Decl. as <u>Exhibit 1</u>. The Proposed Order finds, at this time, that privilege has been waived to those categories that Defendants believe are within the scope of the waiver and that these materials must be produced should Defendants proceed with their defense. *See* Mot. at 10-11. The Proposed Order defers deciding the scope of Defendants' advice of counsel defense until after Plaintiff has had an opportunity to review these materials and brief the Court on whether privilege over the Merits Materials has also been waived by the Defendants' advice of counsel defense.[3]

---

the issue was ripe because "[i]f the federal courts were to require habeas petitioners to give up the privilege categorically and for all purposes, attorneys representing criminal defendants in state court would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution." 331 F.3d at 722. *Locascio* was likewise a federal criminal prosecution, and the court found the scope of the waiver was ripe because it needed to determine whether the defendant's counsel had to be disqualified prior to trial. 357 F. Supp. 2d at 548 ("Prior to addressing the larger question of whether disqualification is necessary in the present case, this Court must first answer the threshold question of whether the attorney-client privilege . . . would likely be waived in the event that Chanes asserts a reliance of counsel defense."). In neither case did the government argue that it was premature to determine the scope of the attorney-client privilege given the unique circumstances of each case. This is not a criminal prosecution, does not implicate any ancillary issues such as disqualification, and does not implicate any of the concerns raised in *Bittaker* and *Locascio.*

[3] Plaintiff may identify additional subject matter areas beyond the Merits Materials that are subject to the waiver following their review of Defendants' materials. For example, Defendants' Answer states Amgen "complied with the applicable disclosure requirements under GAAP as reviewed by its auditor E&Y." ECF No. 69 at 3. Defendants have withheld numerous documents from E&Y on

### B.    The Court Should Find that Defendants Have Waived Privilege Over the Merits Materials if the Court Issues Any Order on Scope

In the alternative, if the Court issues an order on scope at this juncture, the Court should find that Defendants, at a minimum, have waived privilege relating to the materials Defendants believe are within the scope of the waiver as well as the Merits Materials that are directly related to Defendants' advice of counsel defense: (i) the merits of the underlying IRS dispute and Amgen's views on the strength of its position, (ii) the potential risks to Amgen arising from the IRS dispute, (iii) how potential liabilities from the IRS dispute were accounted for in Amgen's reserves, and (iv) the impact the IRS dispute had on Amgen's reserves. The Alternate Proposed Order is attached to the Kaufman Decl. as Exhibit 2.

As set forth below, Defendants' self-interested and improperly narrow view about the scope of their own privilege waiver is due no deference. "There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice." *Glenmede Trust Company v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995). Doing so would allow the party "to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery." *Id*. This "would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness." *Id*.; *see Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971, at *4 (S.D.N.Y. Oct. 11, 1995) (adopting the reasoning in *Glenmede* and rejecting defendant's request to limit the scope of discovery related to defendant's advice of counsel defense).

---

privilege grounds. Once Defendants assert their reliance on counsel defense, Plaintiff may learn Defendants seek to support their scienter defense with advice they received regarding financial disclosures under GAAP. At that point, it may become apparent that documents relating to counsel's advice concerning Amgen's disclosure obligations under GAAP are subject to waiver.

- 12 -

### 1.    The Amended Complaint Expressly Alleges Amgen
### Downplayed the Merits of the IRS Dispute

Defendants concede at least two categories of materials have been waived by their advice of counsel defense: (i) "all privileged communications concerning the legal advice [Defendants] received addressing the disclosure of the proposed adjustment dollar amounts;" and (ii) "any privileged communications or documents that discuss the merits of the underlying IRS dispute to the extent they are included with the legal advice regarding the disclosures at issue." Mot. at 11.

Defendants nonetheless seek to limit the scope of documents subject to waiver by mischaracterizing Plaintiff's claims. Defendants assert Plaintiff's claims relate solely to Amgen's failure to "publicly disclose the dollar amount of the IRS's proposed adjustments," *id.* at 1, and argue "Plaintiff has never alleged or argued that the merits of the underlying IRS litigation are relevant at all, much less to scienter." *Id.* at 11. This is wrong. As Judge Cronan recognized, Plaintiff also alleges Defendants misled the market by minimizing Amgen's potential exposure to the IRS and by failing to properly disclose the risks Amgen faced as a result of the IRS dispute. ECF No. 63 at 28.

The Amended Complaint expressly alleges Defendants violated the Exchange Act, not only by failing to quantify the amount of money sought by the IRS, but also by minimizing the potential ramifications of the IRS dispute, such as by repeatedly describing it as meritless. *See, e.g.*, ¶114 ("[i]n any event, we firmly believe that the IRS's positions in the Notices are without merit. . ."); ¶148 (same); ¶198 (same); ¶200 ("[w]e strongly believe the IRS' position is without merit, and we have appropriate tax reserves, and this dispute will take several years to resolve."); ¶212 ("I think we've been very clear that we think the IRS' position is without merit. And it's as simple as that. We think their position is without merit. And we think we've taken appropriate adequate reserves for the matter in question."). These Class Period statements misled the market about the magnitude

- 13 -

of Amgen's tax exposure and the true risk the Company faced. ¶¶6; 69; 171; 173; 178; 180; 185; 191; 193; 204; 206; 213; 215; 217; 222; 224; 248.

Importantly, Judge Cronan recognized Plaintiff's claims are broader than simply Amgen's failure to disclose the $10.7 billion figure. In support of his holding that Defendants' statements were materially false and misleading, Judge Cronan credited allegations that Defendants minimized risks and failed to reveal the true nature of Amgen's potential liabilities from the IRS dispute. Judge Cronan held "Defendants had a duty to disclose the $10.7 billion figure *or otherwise inform investors as to the true extent of Amgen's potential liability . . .*" ECF No. 63 at 21. He further held that "Defendants' omission of the $10.7 billion potential liability *or other information from which investors could accurately assess the true nature of the IRS dispute* concealed the extent of the risk the company was facing, making its use of vague qualifiers like 'significant' and 'substantial' plausibly misleading.'" *Id.* at 25 (citing *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013)); *see also id.* at 28 (Defendants omitted "the fact that the liability Amgen faced was as high as $10.7 billion *or otherwise disclosing facts sufficient to allow investors to assess the true extent of the risk.*"); *id.* at 35 ("the Amended Complaint plausibly alleges that Defendants were under a clear duty to disclose, whether by stating the specific amount sought by the IRS *or disclosing other facts sufficient to inform investors as to the true extent of the liability the Company was facing*.").

Finally, documents concerning Amgen's reserves are relevant to Defendants' defense. Plaintiff alleges Defendants misrepresented that Amgen had "appropriate adequate reserves for the matter in question." ¶212; *see also* ¶200. And Judge Cronan held Defendants misled investors by affirmatively representing Amgen "believe[d] that [it has] adequate reserves for" the IRS tax liability because those statements also served to minimize the risks to Amgen. ECF No. 63 at 13.

Accordingly, documents relating to how Amgen set its reserves and the impact of the IRS dispute on Amgen's reserves bear directly on Defendants' scienter and reliance on counsel defense.

> **2.    The Merits of the Underlying IRS Dispute Are Directly Relevant to the Good Faith of Defendants' Reliance on Counsel's Advice**

Defendants tacitly admit the merits of the underlying IRS dispute are directly relevant to whether Defendants reliance on counsel's advice regarding the adequacy of their disclosures was in good faith. They nonetheless seek to artificially limit disclosure of such communications about the merits only "to the extent that Amgen's legal advice regarding disclosures entailed any 'evaluation of the merits' of the IRS litigation." Mot. at 12. This should be rejected for multiple reasons.

First, the advice of counsel defense waives privilege over any information Defendants' counsel relied on when opining about the adequacy of disclosures—regardless of whether all such information was disclosed to the Defendants. To establish an advice of counsel defense, a defendant must demonstrate, among other things, that he "relied on such advice in good faith." *O'Meally*, 2010 WL 3911444, at *4; *United States v. Denkberg*, 139 F.4th 147, 156 (2d Cir. 2025). The determination of the scope of the waiver "may turn on a variety of considerations, one of which may involve the question of what information was known to the attorney when he formulated his opinion." *Matsushita*, 1995 WL 527640, at *2. Accordingly, "even if some of the information reviewed by counsel was not then conveyed to the client as part of the advice, that information would come well within the scope of relevance if the attorney relied upon it or at least considered it in arriving at the conclusions that he did convey to the client." *Id.*; *see Buspirone Pat. Litig.*, 210 F.R.D. at 54 ("[T]he subject matter that would be placed at issue also includes whether any such reliance was reasonable, a question that can in some circumstances depend on what counsel knew when it rendered its advice.").

- 15 -

Second, the good faith of Defendants' reliance on counsel's advice about their disclosures also depends on what Defendants knew or believed about the merits of the tax dispute. If counsel told Defendants Amgen faced serious litigation risk in the underlying tax dispute, this information would be highly relevant to whether Defendants relied in good faith on counsel's advice about the adequacy of their public disclosures regarding the IRS audits and the potential risks to the Company.

Defendants' attempt to artificially limit disclosure of the merits only "to the extent that Amgen's legal advice regarding disclosures entailed any 'evaluation of the merits' of the IRS litigation," Mot. at 12, is contrary to both the law and common sense. It makes no difference whether counsel opined to Defendants about the merits and the public disclosures in the same communication or in different ones. Defendants—like all reasonable people—are capable of putting together separate conversations about related subjects to form an opinion. Thus, in evaluating the advice of counsel defense, the fact-finder looks to all the information known to the defendant when evaluating whether their reliance on counsel was in good faith. *See Locascio*, 357 F. Supp. 2d at 551 ("The argument that the jury should be able to assess the totality of [defendant's] knowledge . . . finds support in the case law of this Circuit"); *In re Gaming Lottery Sec. Litig.*, 2000 WL 340897, at *2 (S.D.N.Y. Mar. 30, 2000) ("Defendants' state of mind . . . will be judged by the jury based on . . . the circumstances confronting the defendants at the time."); *Bilzerian*, 926 F.2d at 1294 (finding trial court "correctly held that if [defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal"). For this reason, the "waiver extends not only to the specific communication disclosed but also to 'all other communications relating to the same subject matter.'" *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 692 n.1 (S.D.N.Y. 1986) (quoting *In re Sealed Case*, 676 F.2d 793,

- 16 -

809 (D.C. Cir. 1982)); *Freeman v. Giuliani*, 2024 WL 5202554, at *3 (S.D.N.Y. Dec. 23, 2024) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007)) ("[t]he widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter.").

The merits of Amgen's dispute with the IRS and the adequacy of Defendants' public disclosures about that dispute are the same subject matter. In fact, Defendants themselves tied the adequacy of their disclosures to the merits of the IRS dispute. During Amgen's August 3, 2021 conference call with analysts, in response to questions about what disclosures to expect going forward about the IRS dispute, including what an "upper bound of liability for 2013 through now would be," Defendant Griffith stated, "We strongly believe the IRS' position is without merit, and we have appropriate tax reserves," "We disagree - strongly disagree with the proposed adjustments," and "we believe that we have adequate reserves for that." ¶200. Similarly, on September 14, 2021, in direct response to an analyst's question about the "potential tax liability that you may face from some of the IRS actions," instead of disclosing the amounts sought by the IRS, Defendant Bradway stated, "I think we've been very clear that we think the IRS' position is without merit. And it's as simple as that. We think their position is without merit. And we think we've taken appropriate adequate reserves for the matter in question." ¶212. It cannot be seriously disputed that Defendants' statements about the adequacy of their disclosures were intertwined with Defendants' views of the merits of the underlying IRS dispute and Amgen's reserves relating to potential liabilities to the IRS.

Indeed, Judge Cote rejected an almost identical challenge Defendants raise here in *Perrigo*, 2020 WL 7251277, at *1. As here, the *Perrigo* defendants asserted an advice of counsel defense to rebut claims that it failed to disclose a $1.9 billion tax assessment. *Id.* The *Perrigo* defendants

- 17 -

"withheld production of documents . . . that concern[ed] its substantive response to the audit." *Id.* And, as here, the plaintiffs argued the *Perrigo* defendants had waived privilege as to the merits to the tax dispute because "any legal advice given to Defendants about their assessment of the risk that IRS would assess Perrigo with a tax liability—and the degree to which that liability could be quantified—is inextricably intertwined with Defendants' disclosure decisions about those same issues." Plaintiffs' Letter Motion to Compel at 1, *In re Perrigo Company plc Securities Litigation*, 19-CV-70, Dkt. 155 (S.D.N.Y. Nov. 24, 2020).

Judge Cote granted plaintiffs' motion and compelled production of documents related to both (i) defendants' disclosure obligations and (ii) the merits of the underlying audit dispute because the "distinction between advice received about disclosure obligations to the SEC and [its] investors and advice received about the merits of the Irish Revenue calculation is unworkable." *Perrigo*, 2020 WL 7251277, at *1. As Judge Cote reasoned, "as a theoretical matter, any advice about disclosure is contingent on an analysis of the merits of the Irish Revenue audit." *Id.* Judge Cote separately found "based on the submissions of the parties here, it appears that the advice actually given to Perrigo regarding its reporting obligations under U.S. securities laws depended entirely on an evaluation of the merits of that audit." *Id.*; *see also Wyly*, 2011 WL 3366491, at *3 (advice of counsel waiver extended to "*both* securities-and tax-related legal advice regarding the creation and operation of the offshore trusts" at issue, and defendants could not "limit [the] waiver to *securities*-related advice" only).

The same logic applies here, in that "any advice about disclosure is contingent on an analysis of the merits of the [underlying] audit." *Perrigo*, 2020 WL 7251277, at *1. If counsel believed or conveyed to Defendants that Amgen faced serious litigation risks in the underlying tax

- 18 -

dispute, this information would be highly relevant to determining whether Defendants relied in good faith on counsel's advice. This is sufficient to establish waiver.

Defendants nonetheless attempt to distinguish *Perrigo* by blatantly misquoting it. Defendants assert *Perrigo* is distinguishable because, in their view, "the defendant did not dispute that its disclosure obligations 'depended entirely on an evaluation of the merits' of an Irish Revenue audit and that it chose not to disclose the assessment 'because counsel advised [the defendant] that it would prevail on the merits in its dispute with Irish Revenue.'" Mot. at 12 (quoting *Perrigo*, 2020 WL 7251277, at *1-*2). But Judge Cote never said the defendants made any such admissions. The *Perrigo* defendants instead *vehemently* disputed that their disclosure obligations depended on the evaluation of the merits of the underlying tax dispute, as follows:

> Here, the 'subject matter' is the disclosure decisions that are the subject of the surviving allegations in the Complaint—***not, as Plaintiffs contend, the underlying Irish legal advice Perrigo received regarding its substantive response to the Audit (including its response in Ireland to the Audit Findings Letter).***

Defendants' Letter Motion to Compel at 1, *In re Perrigo Company plc Securities Litigation*, 19-CV-70, Dkt. 159 (S.D.N.Y. Nov. 30, 2020). *Perrigo* is on point, and Defendants' gross mischaracterization of its facts is precisely why courts prohibit defendants from deciding the scope of their own privilege waiver.

If all this were not sufficient, Defendants' position that "the merits of the IRS dispute . . . are irrelevant to the disclosure decision," Mot. at 4, also directly contradicts Defendants' arguments in their motion to dismiss the Amended Complaint. Defendants repeatedly asserted their outside auditor, E&Y, conducted audits of their transfer pricing practices and issued "clean" opinions each year. *See, e.g.*, ECF No. 41 at 3, 9-10, 20, 30. From this, Defendants argued that the "far more compelling inference is that Defendants believed (and continue to believe) that Amgen's transfer pricing judgments were correct and had no intention of misleading anyone." *Id.*

- 19 -

Defendants cannot have it both ways. If E&Y's opinions about the merits are relevant to whether Defendants' intended to mislead anyone, it follows that their counsel's opinions about the merits are likewise relevant to whether Defendants relied in good faith on counsel's advice regarding their disclosures.

For the foregoing reasons, if the Court issues an order on scope at this juncture, the Court should find that Defendants have also waived privilege over the Merits Materials for the reasons set forth above and issue the Alternate Proposed Order attached to the Kaufman Decl. as <u>Exhibit 2</u>.

### C. Defendants Cannot Claw Back Documents They Voluntarily Produced Pursuant to Waiver

The Court should reject Defendants' request to claw back documents they intentionally and voluntarily produce pursuant to waiver. Defendants' request for a claw back is the quintessential example of Defendants using the waiver of privilege as both sword and shield. If they win the discovery dispute, they get to use their hand-picked communications at trial and withhold any communications about the merits of the IRS dispute. If they lose the discovery dispute, they get to revoke their advice of counsel defense, claw back all of their waived communications, and proceed as if they never asserted the defense in the first place. This runs directly counter to the Second Circuit's admonition that the attorney-client privilege "cannot at once be used as a shield and a sword." *Bilzerian*, 926 F.2d at 1292. This relief would also unduly prejudice Plaintiff—who after expending enormous time and expense reviewing these materials, preparing for depositions, and deposing counsel and other relevant witnesses—would have this evidence snatched away on the eve of trial should Defendants deem it unhelpful to their cause.

Defendants' proposal also runs counter to the principle that the intentional and voluntary disclosure of privileged communications to an adversary permanently waives any protection such documents are afforded. *See, e.g.*, *United States v. Ray*, 2021 WL 5493839, at *6 (S.D.N.Y.

Nov. 22, 2021) ("[t]he disclosure of confidential communications with counsel is a consequential event . . . . Once the privilege is waived, that confidentiality is lost forever. The privilege can never again be asserted—either in this case or in any other case."); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 480 (S.D.N.Y. 1993) ("[T]he intent of the party and its attorney not to cause an implied waiver is immaterial if they intentionally undertake actions that have the effect of causing such a waiver."); *Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 378 (E.D.N.Y. 2011) (quoting *Local 851 of Int'l Bd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 129 (E.D.N.Y. 1998) ("[i]t is well-settled that '[v]oluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege'"); *Loguidice v. McTiernan*, 2018 WL 4011584, at *5 (N.D.N.Y. Aug. 22, 2018) (production of a memo containing legal advice constitutes a waiver of attorney-client privilege); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (voluntary disclosure of work product to an adversary waives privilege).

Defendants' reliance on Rule 502(d) is similarly wrong. The "language of the Rule, its legislative history, and the interpreting case law" all show that "Rule 502 was never designed to provide blanket immunity to parties for subject matter waiver resulting from the selective, intentional disclosure and waiver such as what occurred here." *XY, LLC*, 2018 WL 11000694, at *5.

First, "the history of the Rule reveals that the drafters did consider, within the context of protecting voluntary disclosures of privileged information by a party in a governmental investigation, whether to address if selective disclosures or waivers should be permitted." *Id.* (citing Advisory Committee on Evidence Rules, Minutes of Meeting (Apr. 24-25, 2006), at 4-5). However, "the concept of allowing selective waiver was controversial, and ultimately not included

- 21 -

in the adopted version of the Rule." *Id.* (citing Advisory Committee on Evidence Rules, Minutes of Meeting (Nov. 16, 2006) at 10-11; Report of Advisory Committee on Evidence Rules, May 15, 2007, at 4; Fed. R. Evid. 502).

Second, "permitting such selective, intentional waivers is inconsistent with the foundational tenets of the attorney-client privilege." *Id.* at *6. "Taken to the logical end, either side in this action could simply disclose selected attorney-client privileged communications to the other, in hopes of gaining leverage or influencing the outcome of certain issues, without any repercussions and without having to disclose conflicting opinions—allowing the privilege to be used as both a sword and shield." *Id.* This "simply is not, and cannot be, the purpose of the attorney-client privilege." *Id.*

Third, "to interpret Rule 502(d) to exclude generally intentional waivers from triggering subject matter waiver ignores the plain language of Rule 502(a)," which states that "waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Id.* (quoting Fed. R. Evid. 502(a)).

Fourth, "permitting intentional, selective disclosures or waivers of communications protected by the attorney-client privilege may disrupt an orderly progression of pretrial preparation." *Id.* This is particularly the case where there is no "date certain for a party to disclose whether it intends to inject privileged information into the case and, therefore, the determination of whether a waiver occurred and whether subject matter waiver is appropriate cannot necessarily await a party's 'use' of the privileged information." *Id.*

The rationale in *XY, LLC* has been widely adopted by courts throughout the country.[4] And contrary to Defendants' suggestions, *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) does not support their position. *Brookfield* involved the inadvertent production of privileged information where "redacted text was visible only when the corresponding metadata was reviewed." *Id.* It did not address a scenario where, like here, a defendant sought to strategically disclose privileged materials while preserving the ability to claw back such documents if it forgoes the defense. *Brookfield* did not discuss whether Rule 502(d) would permit a claw back under such extreme circumstances.

### D. The Court Lacks Authority to Enter an Order Limiting Defendants' Privilege Waiver to Only this Action Under Rule 502(d)

Lastly, the Court lacks authority under Rule 502(d) to enter an order limiting Defendants' waiver to only this action. The text of Rule 502(d) states that a federal court may order that a

---

[4] *See Alter Domus, LLC v. Winget*, 2024 WL 4541554, at *5 (E.D. Mich. Oct. 22, 2024) ("Many courts have expressed skepticism that they are empowered to enter and enforce orders permitting parties to limit the effect of intentional, as opposed to inadvertent, disclosures of privileged materials under Evidence Rule 502(d) . . . . The hazy boundaries of the Court's authority to have entered an order preserving privilege over intentional disclosures strongly supports the magistrate judge's narrow interpretation."); *Potomac Elec. Power Co. & Subsidiaries v. United States*, 107 Fed. Cl. 725, 731 (2012) (Rule 502(d) is "expressly limited to disclosures which have not resulted in waivers of privilege for the purpose of the current proceeding—which simply cannot be the case with any intentional waivers made in the course of, for example, an advice-of-counsel defense."); *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *3-*4 (D. Idaho Aug. 14, 2017) ("The Court also has serious reservations about the enforceability of a clawback order extending to intentional disclosures . . . . [a]llowing a party to intentionally and tactically disclose protected materials during litigation, while preserving the ability to assert privilege when such tactics change and again parties not privy to the Rule 502(d) Order, would stretch attorney-client and work product protections far beyond their intended purpose"); *Hostetler v. Dillard*, 2014 WL 6871262, at *4 (S.D. Miss. Dec. 3, 2014) ("Plaintiffs argue that the Court's Order [21] and Fed.R.Evid. 502(d) are not applicable to the *intentional* disclosures at issue. The Court agrees.") (emphasis in original)); *Thomas v. Marshall Pub. Schs.*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) ("While Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent,' it does not sanction the tactical, selective disclosure of some privileged materials for use in litigation while withholding others on the same subject.").

- 23 -

disclosure is not a waiver in any other federal or state proceeding *if* the court finds that the privilege

was *not* waived in the pending litigation. *See* Fed. R. Evid. 502(d) ("A federal court may order that

the privilege or protection is not waived by disclosure connected with the litigation pending before

the court — in which event the disclosure is also not a waiver in any other federal or state

proceeding."). That is not the case here. The advice of counsel defense requires the waiver of any

privileged materials related to the defense. Once a waiver is effectuated, the Court has no power

under Rule 502(d) to prevent other litigants from accessing such materials in federal or state

proceedings under the plain text of the rule.[5]

Defendants' authority is not to the contrary. In *S.E.C. v. Bank of America Corporation*,

Judge Rakoff so-ordered a stipulation by the parties that would allow the defendant "to waive

attorney-client privilege and work-product protection regarding certain categories of information

material to this case (and seemingly also relevant to certain ongoing state and federal inquiries)

without thereby waiving such privilege and protection regarding *other information* that may be of

interest in related private lawsuits." 2009 WL 3297493, at *1 (S.D.N.Y. Oct. 14, 2009). As such,

the protective order "simply protect[s] Bank of America against any claim that the stipulated

waiver here attached implicitly effectuates a broader waiver." *Id.* Here, on the other hand,

Defendants ask for "an order limiting any privilege waiver to this action alone." Mot. at 15. There

is no federal rule or other authority authorizing the Court to prevent other federal or state courts

---

[5] Plaintiff stated prior to conducting legal research in opposition to Defendants' Motion that Rule 502(d) might allow waiver to be limited only to this case during the parties' Discovery Conference. *See* ECF No. 107, at 32:13-25. As the Court pointed out during the Conference, however, Rule 502(d)'s text confers no such authority. *See id.* at 16:18-25 – 17:1-4 (THE COURT: "I think what I'm struggling with is whether Rule 502 authorizes me to grant it. I'll confess I've always thought of 502 as being about inadvertent production . . . . I'd certainly like to hear more about that in the briefing because that would be new to me."). The Plaintiff conducted further research per the Court's request and now believes Defendants' requested relief is unavailable under the rule for the reasons set forth herein.

from finding the privilege over any materials disclosed here has been waived. That is the natural consequence—in this case and every other case—of a defendant choosing to deliberately, voluntarily, and strategically waive privilege.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion as unripe and issue the Proposed Order attached to the Kaufman Decl. as <u>Exhibit 1</u>. In the alternative, if the Court issues an order on scope at this juncture, the Court should find that Defendants have waived privilege over the materials they believe to be within the scope of the waiver as well as the Merits Materials, and issue the Alternate Proposed Order attached to the Kaufman Decl. as <u>Exhibit 2</u>.

DATED:  February 24, 2026                 Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
AVITAL O. MALINA
SKYLER J. SANDS
JASON R. EDELMAN


_/s/ Evan J. Kaufman_
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
amalina@rgrdlaw.com
ssands@rgrdlaw.com
jedelman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
MATHEW ANDREWS
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
mandrews@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC I. NIEHAUS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ericn@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

## LOCAL RULE 7.1(C) CERTIFICATE

Pursuant to Local Rule 7.1(c), the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 8,384 words.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN