UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :
                :
                :   1:23-cv-02138 (JPC) (HJR)

IN RE AMGEN INC. SECURITIES    :
LITIGATION                :
                :
                :
                :
                :
                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF THEIR MOTION FOR
### (A) A PROTECTIVE ORDER AND (B) AN ORDER LIMITING
### <u>DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY</u>

Jay B. Kasner
Tansy Woan
Michael W. Restey Jr.
Jacob G. Lefkowitz
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000


Peter B. Morrison
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
2000 Avenue of the Stars
Los Angeles, CA 90067
(213) 687-5000


*Attorneys for Defendants Amgen Inc., Robert*
*  A. Bradway and Peter H. Griffith*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... iii

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.      THE DISPUTE OVER THE SCOPE OF WAIVER IS RIPE FOR RESOLUTION...........2

II.     THE SCOPE OF WAIVER IS DEFINED BY THE LEGAL ADVICE UPON WHICH THE CLIENT RELIED. ........................................................................................4

III.    ALTERNATIVELY, IF THE COURT DEFERS DEFINING THE SCOPE OF WAIVER, IT SHOULD ENTER AN ORDER THAT FACILITATES THE PRODUCTION OF DOCUMENTS WHILE PRESERVING DEFENDANTS' RIGHT TO WITHDRAW THE DEFENSE AND CLAW BACK PRIVILEGED MATERIALS. ........................................................................................................8

IV.     IN ALL EVENTS, THE COURT SHOULD ENTER AN ORDER LIMITING DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY UNDER RULE 502(d)...........................................................................................................................9

CONCLUSION.......................................................................................................................11

## TABLE OF AUTHORITIES

*Apica Sellers Representative, LLC v. Abbott Laboratories*,
    23-cv-1034, 2024 WL 5318651 (S.D.N.Y. Dec. 4, 2024)......................................................4

*In re Broadcom Corp. Securities Litigation*,
    No. SACV 01275GLTMLGX, 2005 WL 1403513 (C.D. Cal. Apr. 7, 2005), *aff'd*,
    SA CV 01275GLTMLGX, 2005 WL 1403508 (C.D. Cal. May 10, 2005).........................6

*In re Buspirone Antitrust Litigation*,
    208 F.R.D. 516 (S.D.N.Y. 2002) ....................................................................................4

*In re Buspirone Patent Litigation*,
    210 F.R.D. 43 (S.D.N.Y. 2002) ................................................................................3, 4, 7

*In re County of Erie*,
    546 F.3d 222 (2d Cir. 2008) ...........................................................................................5

*Oklahoma Firefighters Pension & Retirement System v. Musk*,
    807 F. Supp. 3d 255 (S.D.N.Y. 2025) .................................................................................10

*In re Grand Jury Proceedings*,
    219 F.3d 175 (2d Cir. 2000) ...................................................................................5, 7, 9

*Han v. Financial Supervisory Service*,
    17-CV-4383, 2017 WL 7689223 (S.D.N.Y. Oct. 6, 2017).....................................................2

*Matsushita Electronics Corp. v. Loral Corp.*,
    No. 92 CIV. 5461, 1995 WL 527640 (S.D.N.Y. Sept. 7, 1995) ...........................................6

*Motor Vehicle Manufacturers Association of United States, Inc. v. New York State*
    *Department of Environmental Conservation*,
    79 F.3d 1298 (2d Cir. 1996) ...........................................................................................2

*In re Perrigo Co. PLC Securities Litigation*,
    No. 19-CV-00070, 2020 WL 7251277 (S.D.N.Y. Dec. 8, 2020) .........................................8

*Perry v. City of New York*,
    No. 13-CV-1015, 2016 WL 11807719 (S.D.N.Y. Feb. 11, 2016) ........................................5

*In re Piedmont Office Realty Trust Inc. Securities Litigation*,
    No. 07-CV-02660, 2011 WL 13169494 (N.D. Ga. Oct. 27, 2011) .....................................6

*Popochak v. UnitedHealth Group Inc.*,
    No. 22-CV-10756, 2025 WL 1312879 (S.D.N.Y. May 6, 2025) ....................................2, 3

*SEC v. Bank of America Corporation*,
    No. 09 CIV. 6829, 2009 WL 3297493 (S.D.N.Y. Oct. 14, 2009) ......................................11

*SEC v. Honig,*
    18 CIV. 8175, 2021 WL 5630804 (S.D.N.Y. Nov. 30, 2021)................................................6

*Silverman v. Motorola, Inc.*,
    No. 07 C 4507, 2010 WL 2697599 (N.D. Ill. July 7, 2010) ...............................................6

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*,
    945 F. Supp. 2d 431 (S.D.N.Y. 2013) ................................................................................5

*United States v. Farhane,*
    No. 18-CV-11973 (LAP), 2025 WL 2986201, at *5 (S.D.N.Y. 2025)...............................11

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corporation*,
    No. 08-CV-684, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) ..........................................11

## RULES

Fed. R. Evid. 502(d)............................................................................................................10, 11

**INTRODUCTION**

Since filing their Answer, Defendants have been clear that they intend to rely on the advice of counsel regarding their disclosure obligations under the securities laws. Defendants proactively and transparently acknowledged the consequent waiver of attorney-client privilege that this defense entails. Defendants further provided Plaintiff with a detailed, color-coded privilege log and explanatory cover letter to illustrate the categories of legal advice that Defendants believe fall within the scope of waiver, namely approximately 5,200 documents reflecting legal advice provided to Defendants regarding the tax disclosures at issue in this case. These documents arm Plaintiff to probe whether Defendants reasonably and in good faith relied on the advice of counsel in making these disclosure decisions.

Plaintiff seeks to transform Defendants' reliance-on-counsel defense into a sweeping privilege waiver that encompasses privileged advice related to the underlying transfer pricing tax dispute that led to an eight-week trial in Tax Court. The law does not require such a staggering forfeiture. To the contrary, waiver extends only to the legal advice relevant to, and necessary to probe, the client's reliance on counsel in making the disputed decision, which here was the decision not to disclose the IRS's preliminary, proposed tax adjustment dollar amount. The "Merits Materials" as defined by Plaintiff to include "the merits of the underlying IRS dispute and Amgen's views on the strength of its position" fall outside the scope of any reliance-on-counsel waiver because that legal advice did not bear on Defendants' disclosure-related decision-making.

In pressing a boundless privilege waiver, Plaintiff's Opposition to Defendants' Motion for a Protective Order (ECF No. 133 ("Pl. Br." or the "Opposition")) betrays its true aim: not to receive discovery sufficient to test Defendants' good faith reliance on counsel for their securities disclosures but instead to preclude Defendants from invoking this defense by contending it will

1

unravel privilege in Amgen's separate ongoing transfer pricing tax litigation against the IRS. Because the parties' legal dispute has crystallized, Defendants ask the Court to enter a protective order defining the scope of privilege waiver.

**ARGUMENT**

**I.      THE DISPUTE OVER THE SCOPE OF WAIVER IS RIPE FOR RESOLUTION.**

To avoid highlighting an indefensibly broad view of waiver, Plaintiff essentially asks the Court to defer ruling on the scope of waiver because the issue is "unripe." (Pl. Br. at 7.) But the Court has the authority to define the scope of waiver now because it is a concrete legal issue disputed by the parties. A dispute is ripe for adjudication when there is a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996).[1] In the discovery context, courts will adjudicate disputes when the parties take opposing views and reach an impasse. *Compare Popochak v. UnitedHealth Grp. Inc.*, 2025 WL 1312879, at \*3 (S.D.N.Y. May 6, 2025) (adjudicating motion to compel because "the Court is satisfied that the parties have met and conferred in good faith to resolve this dispute, rendering Plaintiffs' Motion ripe for review"), *with Han v. Fin. Supervisory Serv.*, 2017 WL 7689223, at \*5 (S.D.N.Y. Oct. 6, 2017) (denying request for discovery as unripe when plaintiff had yet to issue or serve a subpoena).

The parties' briefing demonstrates that the legal issue regarding the scope of Defendants' intended waiver is ripe for review. Defendants believe the scope of waiver should be defined as the legal advice Defendants received regarding the *disclosure* of the dollar amount of the IRS's

---

[1]  Unless noted, all emphasis is added and all internal citations, quotation marks and alterations are omitted for the reader's convenience.

2

proposed tax adjustment. (ECF No. 112 ("Defs. Br.") at 8-13; § II *infra*.) Plaintiff, by contrast, asserts that waiver must extend far beyond any disclosure advice and include legal advice related to "the merits of the underlying IRS dispute and Amgen's views on the strength of its position." (Pl. Br. at 12; *see also* Kaufman Decl. Ex. 2 at 2.) With the parties at an impasse, the scope of waiver is ripe for a decision by this Court so that Defendants may assert a reliance-on-counsel defense in this case. *Popochak*, 2025 WL 1312879, at *2-3.

This dispute is neither hypothetical nor abstract. Far from leaving Plaintiff "blind" in litigating the scope of waiver before documents are produced, Defendants provided Plaintiff with a detailed, color-coded privilege log that identifies approximately 5,200 documents for which Defendants intend to waive privilege. (*See* Declaration of Tansy Woan ("Woan Decl.") Ex. 3.) In an accompanying cover letter, Defendants explained that these 5,200 documents "convey legal advice about Amgen's disclosures concerning the IRS's preliminary, proposed dollar amount of the tax adjustment for tax years 2010-15, which is the disputed issue in this case and the basis for Plaintiff's claims." (*Id.* Ex. 4.) The cover letter also quantified and categorized the non-waiver documents by subject matter, further clarifying the boundaries of Defendants' intended waiver. (*Id.* at 1-2.) Armed with this information, Plaintiff nonetheless fails to point to any other privilege log entries that it contends fall within the scope of the waiver.

The clarity of the parties' legal positions makes this case distinguishable from *Buspirone*, on which Plaintiff heavily relies. *See In re Buspirone Pat. Litig.*, 210 F.R.D. 43, 52-54 (S.D.N.Y. 2002). There, the defendant had not yet defined the intended reliance-on-counsel defense and whether it would apply to multiple client decisions, including statements the client made to the FDA, a contract between the client and a counterparty, and the client's prosecution of patent infringement claims. *See In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 521 (S.D.N.Y. 2002).

3

The court emphasized that it could not rule on the scope of a privilege waiver "in this kind of factual vacuum" where the defendant had "not even raised any advice-of-counsel defense." *Buspirone Pat. Litig.*, 210 F.R.D. at 52-53. There is no equivalent "factual vacuum" here. Defendants have defined the intended reliance-on-counsel defense and specified that it would apply to Defendants' decision whether to disclose the IRS's preliminary, proposed tax adjustment dollar amount. Defendants have also provided a privilege log and cover letter illustrating the categories of documents within and outside the scope of waiver. Put simply, Defendants have supplied the factual evidence and legal clarity missing in *Buspirone*.

The court's decision in *Apica Sellers Representative, LLC v. Abbott Laboratories*, 2024 WL 5318651, at *1 (S.D.N.Y. Dec. 4, 2024), confirms that the scope of waiver can be—and should be— resolved now. In *Apica*, the court decided the scope of a privilege waiver before document production, granting a protective order that excluded post-contract legal advice as irrelevant to the parties' intent during contract negotiations. *Id.* at *2. Plaintiff attempts to distinguish *Apica* by arguing that the court was able to resolve the scope of waiver "as a matter of law" without reviewing additional materials. (Pl. Br. at 10.) But that is equally true here. As in *Apica,* the dispute turns on whether certain categories of legal advice fall within the subject matter placed at issue by a reliance-on-counsel defense. The question for this Court is a legal one and the scope of privilege waiver can and should be defined now.

## II. THE SCOPE OF WAIVER IS DEFINED BY THE LEGAL ADVICE UPON WHICH THE CLIENT RELIED.

The Court should define the scope of Defendants' waiver to encompass only the legal advice upon which Defendants relied in deciding whether to disclose the IRS's preliminary, proposed tax adjustment dollar amount. Defendants intend to assert a reliance-on-counsel defense solely with respect to that decision, which defines the scope of the corresponding privilege waiver. *Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 945 F. Supp. 2d 431, 437

4

(S.D.N.Y. 2013) ("[T]he 'at-issue' waiver of attorney-client privilege . . . must be held to extend only to communications concerning the advice that Respondent did or did not receive"). Defendants have agreed to produce any legal advice about the tax securities disclosures that is dependent on an assessment of the merits of the tax dispute. However, Plaintiff's Opposition seeks to broaden the waiver to include "Merits Materials" untethered from the decision to disclose.

*First*, Plaintiff relies on case law that predates seminal Second Circuit guidance. In *In re Grand Jury Proceedings*, 219 F.3d 175, 188-89 (2d Cir. 2000), the Second Circuit cautioned that any privilege waiver "should be tailored to remedy the prejudice" to the non-waiving party. While remanding the case to the district court to determine the scope of waiver, the Second Circuit observed that the non-waiving party's prejudice was unlikely to "justify the broad disclosure ordered by the court," which included pure attorney opinion work-product. *Id*. In *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008), the Second Circuit further limited expansive notions of waiver, holding that a party "must *rely* on privileged advice from his counsel to make his claim or defense."

Applying this guidance, courts now regularly confine the scope of waiver to the legal advice upon which the client relied. *See, e.g.*, *Perry v. City of New York*, No. 13-CV-1015, 2016 WL 11807719, at *6 (S.D.N.Y. Feb. 11, 2016) (certain legal advice outside scope because it "would not inform the factfinder's inquiry into whether the decisionmakers at the FDNY" relied on counsel in good faith); *SEC v. Honig*, No. 18 CIV. 8175, 2021 WL 5630804, at *15 (S.D.N.Y. Nov. 30, 2021) (waiver does not extend to communications between a co-defendant and counsel that are not relevant to the advice relied on and necessary to test the defendant's claim of good faith). Plaintiff did not address these cases from Defendants' briefing and the principal case it does cite, *Matsushita Electronics Corp. v. Loral Corp*, No. 92 CIV. 5461, 1995 WL 527640 (S.D.N.Y. Sept. 7, 1995), is directly at odds with these

5

prevailing views on privilege waiver. Plaintiff also ignores the body of case law defining the scope of waiver in the context of securities fraud actions. (*See* Defs. Br. at 10.) These on-point cases show that courts in securities cases construe a reliance-on-counsel defense as waiving privilege only over legal advice "relating to the accuracy of the disclosures" in the securities filings. *In re Piedmont Off. Realty Tr. Inc. Sec. Litig.*, No. 07-CV-02660, 2011 WL 13169494, at *7-8 (N.D. Ga. Oct. 27, 2011); *see also In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403513, at *2 (C.D. Cal. Apr. 7, 2005) (waiver "extend[ed] only to those communications relating to the public statements at issue" as waiver "should be 'no broader than needed to ensure the fairness of the proceedings'"); *Silverman v. Motorola, Inc.*, 2010 WL 2697599, at *4 (N.D. Ill. July 7, 2010) (similar).

*Second,* Plaintiff's claim that "Merits Materials" are relevant either to probing Defendants' intended reliance-on-counsel defense or to Plaintiff's claims of securities fraud is not supported by the record. Plaintiff defines "Merits Materials" to include privileged communications concerning (i) the merits and strength of Defendants' position in the IRS dispute, (ii) the potential risks to Amgen arising from the IRS Audits, and (iii) the impact of the IRS dispute and audits on Amgen's reserves. (Kaufman Decl. Ex. 2 at 2.) But these categories, standing alone, are not necessary to test whether Defendants reasonably and in good faith relied on counsel in deciding whether to disclose the IRS' preliminary, proposed adjustment dollar amount. Only to the extent merits-related assessments are incorporated into legal advice about disclosure would they fall within the scope of any waiver. It is those disclosure-related communications, not "Merits Materials" writ large, that will "remedy [any] prejudice" to Plaintiff by allowing it to probe what Defendants considered in making their disclosure decision.[2] *In re Grand Jury Procs.*, 219 F.3d at

---

[2] Plaintiff speculates that Defendants seek to exclude "Merits Materials" to hide "unhelpful" evidence, such as hypothetical legal advice that "Amgen faced serious litigation risk in the underlying tax dispute." (Pl. Br. 16, 20.)

6

188; *see also Buspirone*, 210 F.R.D. at 52-53 (the scope of waiver depends on the "kind of discovery that would be needed to respond fairly to such a defense and test its accuracy").

Nor are "Merits Materials" relevant to Plaintiff's surviving securities fraud claims. Judge Cronan dismissed allegations that Defendants misrepresented "the potential ramifications of the IRS dispute" by describing it as "meritless." (Pl. Br. at 13-14.) He made clear that Plaintiff's theory is limited to the alleged failure to disclose the $10.7B potential tax liability and that the "many additional theories of liability asserted in the Amended Complaint" are "forfeited or abandoned."[3] (ECF No. 63 at 20 n.12.) He specifically held that any claim premised on Amgen's failure to "convey the likelihood that the IRS's determination will ultimately be affirmed in the Tax Court" was expressly rejected.[4] (*Id.* at 26 n.14.) In light of those rulings, Plaintiff cannot continue to argue that "Merits Materials" are relevant to its claims of securities fraud.[5]

Relatedly, Plaintiff also misreads the court's decision in *In re Perrigo Co. PLC Securities Litigation*, No. 19-CV-00070, 2020 WL 7251277 (S.D.N.Y. Dec. 8, 2020), suggesting that Judge Cote did not rely on the parties' submissions in deciding that the case merits were intertwined with the disclosure decisions and therefore within the scope of any waiver. To the contrary, Judge Cote

---

This makes no sense in light of the fact that Amgen sued the IRS to challenge its tax assessments and spent eight weeks in trial in Tax Court vigorously litigating against the IRS.

[3] Plaintiff has recently demanded that Defendants produce all filings on the Tax Court dockets, which numbers nearly 2,000 entries. Setting aside that many of these materials are publicly-available, they are not relevant to the remaining claims and theories in this action for the reasons described in this paragraph.

[4] The Woan Declaration includes a summary chart of excerpts from Judge Cronan's Opinion (ECF No. 63), the oral argument transcript from the Motion to Dismiss hearing (ECF No. 61), and Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 44), demonstrating the scope of the parties' arguments and the Court's holdings on the motion to dismiss. (Woan Decl. at 2-4.)

[5] For this reason, Plaintiff's effort to tie the adequacy of Defendants' disclosures to the merits of the IRS dispute is unavailing. (Pl. Br. at 17.) As Judge Cronan recognized, "[t]he Company was (and is) free to vigorously dispute the legal and factual merits of the IRS's assessments, and to tell investors that it is doing so." (ECF No. 63 at 26.) Thus, by stating that the IRS's position was "without merit," Defendants were properly disputing the "legal and factual merits of the IRS's assessment," which is separate from their alleged duty to disclose the preliminary, proposed tax adjustment dollar amount. (*See id.*)

included merits assessments in the scope of waiver only after finding "***based on the submissions of the parties here*** . . . that the advice actually given to Perrigo regarding its reporting obligations under U.S. securities laws ***depended entirely*** on an evaluation of the merits of that audit." *Id.* at *1. That finding, in turn, is key to understanding the proper breadth of Judge Cote's holding in *Perrigo*. Contrary to Plaintiff's reading, *Perrigo* does not suggest that invoking a reliance-on-counsel defense in a securities case necessarily waives privilege of merits assessments, including positions in pending litigation. Instead, *Perrigo* stands for the more modest proposition that when a company's disclosure decisions ***depend entirely*** on merits assessments, those materials must be produced. That is not the case here.

Because there is no basis to extend the privilege waiver beyond the advice provided to support Defendants' disclosure decisions at issue in this case, the Court should enter the Proposed Order attached to the Woan Declaration as Exhibit 1.

**III.    ALTERNATIVELY, IF THE COURT DEFERS DEFINING THE SCOPE OF WAIVER, IT SHOULD ENTER AN ORDER THAT FACILITATES THE PRODUCTION OF DOCUMENTS WHILE PRESERVING DEFENDANTS' RIGHT TO WITHDRAW THE DEFENSE AND CLAW BACK PRIVILEGED MATERIALS.**

If the Court decides that it can only define the scope of privilege waiver after Plaintiff has an opportunity to review Defendants' production, it should enter a protective order safeguarding Defendants' right to withdraw the defense and claw back any privileged materials. This Alternate Proposed Order is attached to the Woan Declaration as Ex. 2.

As an initial matter, Plaintiff does not dispute Defendants' right to withdraw the reliance-on-counsel defense under well-settled law, nor does Plaintiff address Defendants' argument that the right should be included in a protective order facilitating the production of documents pursuant to that defense. As a result, Plaintiff has forfeited any argument to the contrary and the Court should

memorialize Defendants' right to withdraw the reliance-on-counsel defense, as recognized and enforced by courts in this district. *See*, *e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 807 F. Supp. 3d 255, 263 (S.D.N.Y. 2025) (Gorenstein, M.J.) ("accept[ing]" and "enforce[ing] defendants' choice not to present [reliance-on-counsel] defense" after ruling on waiver); (*see also* Defs. Br. at 14 (collecting cases)).

Second, while Plaintiff does dispute Defendants' ability to claw back documents in the event the reliance-on-counsel defense is withdrawn, it ignores that this Court may authorize claw back pursuant to its broad and flexible powers to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." (Defs. Br. at 6 (quoting Fed. R. Civ. P. 26(c)(1)).) The circumstances here call for these protections. If Defendants invoke their right to withdraw the reliance-on-counsel defense, the documents produced to support that defense would cease to be relevant. *See Musk*, 807 F. Supp. 3d at 264 (observing that after withdrawal of the defense, the "potential relevance of this [privileged] evidence stands on a different footing . . . [w]ith this issue now excised from the case, defendants' consulting with counsel would not seem to be relevant to any issue in the case"). Given that Defendants' withdrawal of the defense would "excise[] [this issue] from the case," *id.*, Defendants can conceive of no reason why Plaintiff would need to retain these documents, except to hold them hostage and exert improper leverage. In these circumstances, the Court should permit claw back.

## IV.    IN ALL EVENTS, THE COURT SHOULD ENTER AN ORDER LIMITING DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY UNDER RULE 502(d).

The Court should enter an order pursuant to Federal Rule of Evidence 502(d) limiting any privilege waiver solely to this action. Rule 502(d) expressly authorizes federal courts to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before

9

the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). Despite registering no objection on multiple occasions to the use of 502(d) in this case (*see* Jan. 8, 2026 Tr. at 32:10-13 ("No, we're not objecting" to 502(d) protection)), Plaintiff now argues that Rule 502(d) cannot apply because it requires a predicate finding "that the privilege was *not* waived in the pending litigation" before a court can order no waiver in other federal or state proceedings. (Pl. Br. at 24.) In this respect, Plaintiff cites the rights of "other litigants" in federal or state proceedings to access Defendants' documents (*id.*), while previously claiming it cared only about "our plaintiff and the class in our case. That's all that matters to us" (Jan. 8, 2026 Tr. at 33:2-6).

Plaintiff's belated interpretation of Rule 502 finds no support in the text of the rule or case law. First, nothing in the rule requires a threshold finding that a waiver has *not* occurred in the pending litigation. Indeed, if Plaintiff's cramped reading of Rule 502(d) were correct—and only allowed a 502(d) order upon a finding of no waiver—courts would be unable to issue the type of "cabined waivers" routinely approved in complex litigation. For example, in *SEC v. Bank of America Corp.*, No. 09 CIV. 6829, 2009 WL 3297493, at *1 (S.D.N.Y. Oct. 14, 2009), Judge Rakoff ordered that a defendant's forthcoming waiver in the case before him would not, under Rule 502(d), effectuate a broader waiver in related private lawsuits. While Plaintiff distinguishes *Bank of America* as ordering different relief from that requested here (Pl. Br. at 24), it does not explain how Judge Rakoff could invoke Rule 502(d) in a situation where he had determined that the privilege *was* waived in the pending litigation.

At least one court has implemented a 502(d) order in similar circumstances and the Court should do so here. *See Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (ordering that privileged materials waived in the pending

10

proceeding were not waived in a parallel proceeding under the plain text of Rule 502(d)).[6]

## CONCLUSION

For the foregoing reasons, Defendants request the Court enter the Proposed Order attached

to the Woan Declaration as Exhibit 1.

Dated: New York, New York
     April 24, 2026

Respectfully submitted,

*/s/ Jay B. Kasner*
Jay B. Kasner
Tansy Woan
Michael W. Restey Jr.
Jacob G. Lefkowitz
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Jay.Kasner@skadden.com
Tansy.Woan@skadden.com
Michael.Restey@skadden.com
Jacob.Lefkowitz@skadden.com

Peter Morrison
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, CA 90067
Peter.Morrison@skadden.com

*Attorneys for Defendants Amgen Inc., Robert*
  *A. Bradway and Peter H. Griffith*

---

[6] *See also U.S. v. Farhane*, No. 18-CV-11973 (LAP), 2025 WL 2986201, at *5 (S.D.N.Y. 2025) (Preska, J.) (entering a protective order "limiting the use of the waived material to this proceeding").

11

## PAGE AND WORD COUNT CERTIFICATION

I, Jay B. Kasner, hereby certify that the foregoing memorandum of law complies with the word count limitations set forth in Rule II.E of Your Honor's Individual Rules and Practices for Civil Cases, and contains 3,499 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and this certificate.

Dated: New York, New York
         April 24, 2026

                                                          /s/ *Jay B. Kasner*
                                                          Jay B. Kasner