UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                    :
                                                    :   1:23-cv-02138 (JPC) (HJR)
                                                    :
IN RE AMGEN INC. SECURITIES                         :
LITIGATION                                          :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF TANSY WOAN IN SUPPORT OF DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR (A) A PROTECTIVE ORDER AND (B) AN ORDER LIMITING DEFENDANTS' PRIVILEGE WAIVER TO THIS ACTION ONLY

I, Tansy Woan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am admitted to the bars of the State of New York and this Court.  I am a member at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP and am counsel for defendants Amgen Inc. ("Amgen"), Robert A. Bradway and Peter H. Griffith (the "Individual Defendants" and with Amgen, the "Defendants") in the above-captioned matter.

2.      I respectfully submit this declaration in support of Defendants' Reply Memorandum of Law In Further Support Of Their Motion For (A) A Protective Order And (B) An Order Limiting Defendants' Privilege Waiver To This Action Only (the "Reply Brief").

3.      Attached to this declaration as **Exhibit 1** is a true and correct copy of Defendants' primary proposed order regarding Defendants' waiver of attorney-client privilege and work product protection. Defendants respectfully request that the Court enter this proposed order if it determines that the dispute over the scope of waiver is ripe for resolution.

4.      Attached to this Declaration as **Exhibit 2** is a true and correct copy of Defendants' alternative proposed order regarding Defendants' waiver of attorney-client privilege and work product protection. Defendants respectfully request in the alternative that the Court enter this proposed order if the Court defers defining the scope of waiver.

5.      Attached to this Declaration as **Exhibit 3** is a true and correct copy of Defendants' privilege log, dated January 28, 2026.

6.      Attached to this Declaration as **Exhibit 4** is a true and correct copy of Defendants' letter transmitting Defendants' privilege log to Lead Plaintiff Asbestos Workers Philadelphia Pension Fund ("Lead Plaintiff"), dated January 28, 2026.

7.      The below chart transmits true and correct excerpts from Judge Cronan's opinion on Defendants' motion to dismiss (ECF No. 63, 751 F. Supp. 3d 330 (S.D.N.Y. 2024), the "Opinion"), the transcript of oral argument on Defendants' motion to dismiss before Judge Cronan (ECF No. 61, the "Transcript"), and Plaintiff's opposition brief to Defendants' motion to dismiss (ECF No. 44, the "Opposition") to which reference is made in Defendants' Reply Brief:

| Source | Excerpted Text |
|---|---|
| Opinion | "The Pension Fund alleges that while Defendants disclosed the existence of the IRS dispute and noted that the agency had proposed 'significant adjustments,' which 'could have a material impact' on the Company's operations and cash flows, Defendants failed to inform investors about the true extent of the financial risk to the Company by hiding that the IRS was seeking to recover $10.7 billion." (Opinion at 2.) |
| Opinion | "The Pension Fund identifies two categories of misstatements or omissions that it claims are actionable under Section 10(b) and Rule 10b-5. First, the Pension Fund contends that Amgen's Class Period disclosures concerning the IRS transfer-pricing dispute were materially misleading because the Company failed to disclose that it was facing a potential liability of $10.7 billion in back taxes and penalties, plus interest on those taxes. Opposition at 11-14. Second, the Pension Fund argues that Amgen's statements in its Contingencies disclosures that the amounts sought by its opponents in the matters listed in those filings had not been quantified were affirmative misrepresentations given the proposed adjustment figures provided by the IRS. *Id.* at 19-21." (*Id.* at 20.) |
| Opinion | "The Pension Fund's briefing does not address, or addresses only in the most cursory fashion, many additional theories of liability asserted in the Amended Complaint, and the Court therefore deems those issues forfeited or abandoned." (*Id.* at 20 n.12.) |
| Opinion | "[N]othing in this Court's Opinion suggests that Amgen was required to 'confess' to having in fact underpaid its taxes. The Company was (and is) free to vigorously dispute the legal and factual merits of the IRS's assessments, and to tell investors that it is doing so…" (*Id.* at 26.) |
| Opinion | "As a result, to the extent that the Pension Fund seeks to hold Amgen separately liable for failing to 'convey the likelihood that the IRS's determination will ultimately be affirmed in the Tax Court,' Opposition at 13, that theory is rejected." (*Id.* at 26 n.14.) |
| Opinion | "Here, again, the defect in Amgen's disclosures is not that it failed to resign itself to the correctness of the IRS's allegations, but that its vague descriptions of the amount the IRS was seeking could plausibly have misled investors regarding the extreme magnitude of the potential liability." (*Id.* at 27 n.15.) |

3

| Source | Excerpted Text |
|---|---|
| Transcript | THE COURT: Now, the amended complaint also alleges that Amgen's statements that its accrual for income tax liability was appropriate, that those statements were misleading because Amgen had not accrued a meaningful amount to cover its exposures to the IRS and because its statements minimized and failed to inform investors of the magnitude of Amgen's contingent liabilities.<br><br>With respect to the tax reserves part about that, whether or not Amgen announced its statements that it accrues sufficient appropriate tax reserves, are you pursuing a theory there separate and apart from the other parts of what I just read?<br><br>MR. KAUFMAN: No, we're not alleging that there was anything inappropriate or inaccurate with respect to their reserves, so we're not challenging the reserves themselves. It's more of the statements about the reserves should be read in context with their other statements, which altogether gave a certain impression to investors based on their totality of the statements. (Transcript at 4:22-5:15.) |
| Transcript | THE COURT: Paragraph 188 of the amended complaint, paragraph 188 alleges that Amgen's statements, that we disagree with the '13 through '15 proposed adjustments and calculations, and a pursuing resolution with the IRS administrative appeals office created the false and misleading impression that there was a reasonable possibility that the administrative appeals office would rule in favor of Amgen for its 2013-2015 tax years after it ruled against Amgen in connection with the 2010 to 2012 tax years.<br><br>Your briefing doesn't really address a theory that Amgen misled investors by implying essentially there was a reasonable possibility that it would prevail. I don't read you to be pursuing that theory of misleading investors, but I want to make sure about that.<br><br>MR. KAUFMAN: That's correct." (*Id.* at 5:24-6:13.) |
| Opposition | "Defendants make one argument based on a misapprehension: that Plaintiff alleges Amgen's tax reserves were deficient. *See* MTD 19-23. Although Defendants' statements about the "appropriate[ness]" of Amgen's reserves appear calculated to downplay investor concern regarding the IRS's audits, Plaintiff does not base any claim on the amount of reserves. But it is worth noting that Amgen failed to allocate any reserves for the $10.7 billion sought by the IRS for its 2010-15 tax years. *See* ¶168 (a tax expert retained by UBS stated in part, "Right now AMGN has not allocated the IRS-assessed totals in tax reserves, which aligns with their current position refuting the IRS' assessments – note reserves are generally only allocated when the company believes there is <50% chance of winning its case.")." (Opposition at 23 n.17.) |
| Opposition | "The AC does not challenge the amount of Amgen's reserves." (*Id.* at 29, n.26.) |

5

Executed on: New York, New York
April 24, 2026

/s/ Tansy Woan
Tansy Woan